**BOARD OF GOVERNORS OF STATE COLLEGES AND UNIVERSITIES,** Plaintiff-Appellant, *v.* ILLINOIS HUMAN RIGHTS COMMISSION *et al.*, Defendants-Appellees.—(John Price *et al.*, Defendants.)

Fourth District No. 4—82—0224

Opinion filed October 18, 1982.

Kenneth G. Kombrink, of Dunn, Brady, Goebel, Ulbrich, Morel, Kombrink & Hundman, of Bloomington, for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Jane Lynk, Assistant Attorney General, of counsel), for appellees.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiff, Board of Governors of State Colleges and Universities (Board), filed in the circuit court of Sangamon County a petition for a writ of prohibition, seeking to prevent the defendants, Illinois Human Rights Commission (Commission) and certain of its administrative law judges, from proceeding with charges alleging unfair employment practices which had been filed by several employees of the Board. The circuit court denied the petition and this appeal followed. We affirm the denial.

The proceedings prior to entry into the circuit court straddled a change in the law and this adds some complexity to the case. Therefore, a brief explanation is in order. The Fair Employment Practices Act (Ill. Rev. Stat. 1979, ch. 48, pars. 851 through 867) remained in effect until July 1, 1980, when the Human Rights Act (Ill. Rev. Stat. 1981, ch. 68, par. 1—101 *et seq.*) replaced it and several other laws not involved in this case. The former Fair Employment Practices Commission (FEPC), the Department of Equal Employment Opportunity, and the Human Relations Commission were supplanted by two new agen-

cies, the Department of Human Rights (DHR) and the Human Rights Commission (HRC). Any matter pending before the former agencies was to be "assumed by the Department or Commission, as provided in this Act, at the same stage, or a parallel stage, of proceeding to which it had progressed prior to the effective date of this Act." Ill. Rev. Stat. 1981, ch. 68, par. 9—102(A).

The events prior to the circuit court proceedings were submitted on a stipulation of facts. From it, it appears that defendant Price filed an unfair employment practice charge with the FEPC on November 9, 1979. An investigator conducted a fact-finding conference and wrote a report recommending that the charge be dismissed for lack of substantial evidence. FEPC sent Price a notice of dismissal of his charge on June 6, 1980. Under FEPC rules he was entitled to reconsideration and he made such a request on June 16, 1980. This request was pending when the Human Rights Act became effective on July 1, 1980. HRC treated it as a request for review as such step is known under the Human Rights Act.

The review process is outlined by statutory provisions and by rules promulgated by HRC. The statutes provide:

> "Sec. 8—102. Powers and duties. In addition to other powers and duties prescribed in this Act, the Commission shall have the following powers:
>
> * * *
>
> (G) Decisions. Through a panel of three members designated by the Chairperson on a random basis, to hear and decide by majority vote requests for review and complaints filed in conformity with this Act and to approve proposed settlements.
>
> * * *"

> "Sec. 8—103. Request for Review. (A) Jurisdiction. The Commission, through a panel of three members, shall have jurisdiction to hear and determine requests for review of (1) decisions of the Department to dismiss a charge; and (2) notices of default issued by the Department.
>
> In each instance, the Department shall be the respondent.
>
> (B) Review. When a request for review is properly filed, the Commission may consider the Department's report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the Department in response to the request. In its discretion, the Commission may designate a hearing officer to conduct a hearing into the factual basis of the matter at issue." Ill. Rev. Stat. 1981, ch. 68, pars. 8—102, 8—103.

The pertinent portion of the rules of HRC relating to review is:

"Section 4.1. *Filing with Commission*—A party may request review by the Commission of a decision by the Department to dismiss or default, by filing a request therefor with the Commission at its Chicago office within thirty (30) days of receipt of the Department's notice of its decision. Such request may be accompanied by argument and supporting materials.

Section 4.2. *Notice by Commission*—The Commission shall notify the Department and other parties to the charge of the filing of a timely request for review. Notice to the Department shall be accompanied by a copy of the request. Only the Department and the party requesting review shall participate in any proceedings under this Article.

Section 4.3. *Response by Department*—Within thirty (30) days of receipt of the Commission's notice of the filing of a request for review, the Department shall file a response with the Commission, serving a copy at the same time on the party filing the request. If the Department opposes the request, its response shall consist of a copy of the charge and any amendments thereto, the Department's investigation report, the results of any additional investigation conducted by the Department and a statement of the Department's position, including proposed findings to support the dismissal. If the Department does not oppose the request, its response may consist only of a statement of its position.

Section 4.4 *Reply to New Matter*—Whenever the Department's response relies upon investigative findings or legal reasoning not contained in the original investigation report, the party filing the request may, within fifteen (15) days of service of the response, file a reply with the Commission, with service on the Department at the same time. Only replies which are limited to addressing such new matter will be considered by the Commission."

In accordance with these procedures a lawyer for DHR filed a response on August 27, 1980, setting forth the Department's view that the dismissal was erroneous and that the charge should be reinstated. A three-member panel of the Commission voted to vacate the dismissal on September 3, 1980, and issued an order to that effect, a copy of which was sent to Price and to the Board. DHR then issued a complaint against the Board and scheduled a hearing before an administrative law judge who denied the Board's motion to dismiss the action.

The case of defendant Paden followed substantially the same course. Defendant Prueske has dismissed her charge. Paden filed with FEPC on March 28, 1979; it was dismissed for lack of substantial evidence on February 5, 1980; she requested reconsideration on March 10, 1980; after July 1, 1980, it was treated as a request for review; the Department's response was submitted October 21, 1980, stating that the dismissal was erroneous; three days later an executive assistant of HRC issued an order vacating the dismissal; a copy of the order was sent to Paden and the Board; the Department then issued a complaint and the case was assigned to an administrative law judge.

It was further stipulated that the Board did not receive copies or notices of the investigator's reports, the notices of dismissal, the requests for reconsideration, nor DHR's responses. It was also stipulated that neither the former nor present statutes, nor the rules of the former nor present agencies required that the Board receive such copies or notices.

As previously indicated, the trial court denied the prayer of the petition and refused a writ of prohibition. On appeal the Board makes two principal points: (1) that both the FEPC and the HRC exceeded their statutory authority in promulgating rules for rehearing of dismissals, and (2) that the Board has been denied due process of law in being prevented from participating in the proceedings leading to the vacatur of the dismissals.

The FEPC rule under which the defendant employees requested reconsideration provided:

> "*Dismissal After Investigation*—If after investigation of a charge, the investigative findings indicate that the charge is not supported by substantial evidence or that the Commission lacks jurisdiction of the charge, and this indication is concurred in by the Commission's Executive Director or his designee, the Executive Director shall thereupon cause to be served upon the complainant a Notice of Dismissal. The Notice of Dismissal shall advise the complainant that the charge is recommended for dismissal, and shall be accompanied by a copy of the written investigation report. The Notice shall further advise that the complainant may object to dismissal of the charge and obtain consideration of the matter by the full Commission, by serving a demand therefor upon the Commission within thirty (30) days of the date of the Notice. If no such timely demand is served by the complainant upon the Commission, the charge shall be deemed dismissed as of the expiration of said thirty-day period, and the parties shall be so notified. In the event the

complainant files a timely demand for reconsideration as herein provided, the matter shall be reevaluated by the Commission's staff and submitted to the full Commission for determination. A complainant's timely demand for reconsideration under this Section may be accompanied by such statement and/or evidence as the complainant may feel supports the charge."

This was FEPC Rule 4.5, which has been supplanted by HRC Rule 4.1 *et seq.*, which are set out above.

The Board's argument is that the Fair Employment Practices Act did not provide for any such procedure but provided only that the agency's decisions were to be governed by the Administrative Review Act. Ill. Rev. Stat. 1979, ch. 48, par. 860.

The Board relies primarily on *People ex rel. Olin Corp. v. Department of Labor* (1981), 95 Ill. App. 3d 1108, 420 N.E.2d 1043, and *Aliperto v. Department of Registration & Education* (1980), 90 Ill. App. 3d 985, 414 N.E.2d 117, which say that an administrative agency may not review or reconsider its final decisions unless the enabling legislation provides that. As the court said in *Pearce Hospital Foundation v. Illinois Public Aid Com.* (1958), 15 Ill. 2d 301, 307, 154 N.E.2d 691, 695:

> "[I]t has been consistently held that an administrative agency may allow a rehearing, or modify or alter its decision, only where authorized to do so by statute. [Citations.]"

In each of these three cases the administrative agency rendered a final decision and then reconsidered or was asked to reconsider it. This was not prescribed by the enabling legislation.

A primary focus of inquiry must be whether the reconsideration under FEPC Rule 4.5 is a final, or interlocutory, order. In our opinion it is interlocutory. The rule appears to be carefully drafted to avoid any appearance of finality; it is replete with references to recommendations for dismissal. It does not provide for dismissal itself unless a timely demand for reconsideration is made by the complainant. Dismissal when no demand for reconsideration has been made would, of course, be a final order, but it would be in favor of the employer who would have no cause for complaint under those circumstances. Until the FEPC, or its successor DHR, in fact issues a complaint against an employer, the entire matter remains in an investigatory stage; a final order, apart from the dismissal in the absence of request for reconsideration, could arise only out of an adjudication of the merits. To reconsider that order would require statutory authorization. (*Pearce Hospital.*) Anything prior to that stage lies within the competency of the agency.

Administrative agencies must be left free to devise their own procedures for the handling of their business. (See *Vermont Yankee Nuclear Power Corp. v. National Resources Defense Council, Inc.* (1978), 435 U.S. 519, 55 L. Ed. 2d 460, 98 S. Ct. 1197.) *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, 369 N.E.2d 875, dealt with a rule promulgated by the Director of Insurance prescribing uniform policies for fire and lightning insurance; the insureds challenged the provision in the standard form that all actions on a policy be brought within one year of the loss. The court first held that the legislature may constitutionally delegate authority to the Director of Insurance to prescribe uniform policies. The court then discussed whether the Director had interpreted that authority too broadly and held that he had not; rejecting the distinction between legislative acts and administrative acts for limning an agency's rule-making power, the court said:

> "Many of our early cases adhere to the notion that administrative rule making basically is interstitial, interpolating among the standards set by the legislature to fill in details and create a comprehensive regulatory scheme. [Citations.] Subsequent experience, however, with the administrative regulation of highly complex and technical subjects leads us to conclude that the administrative task necessarily differs substantially from the traditional model. *** In most cases, therefore, the administrator's task is not merely to interpolate among broadly stated legislative prohibitions, but, rather, to extrapolate from the broad language of his enabling statute, and, using the regulatory tools given him by the legislature, to deal with the problems which the legislature sought to address." (68 Ill. 2d 361, 370, 369 N.E.2d 875, 878.)

*Stofer* concluded that a delegation of authority must sufficiently identify the persons and activities subject to regulation, the harm to be prevented, and the means available to the agency to prevent the harm.

■ We conclude that FEPC Rule 4.5, and the successor HRC Rules 4.1 through 4.4, do not create any new remedy nor expand the agency's jurisdiction and therefore are within the agency's general rule-making power.

The Board has also raised questions of compliance with the rules, assuming *arguendo* that the rules are valid. We have examined each objection and find no merit in any of them.

■ First, it is claimed that the full FEPC did not act on the requests as provided in Rule 4.5. At the appropriate time Rule 4.5 was

no longer in existence but had been superseded by the HRC Rules which require only a panel of three to act upon such requests.

Second, it is claimed that Paden's request was not timely. The notice given to her provided a return date of March 11, 1980, and her request for reconsideration was filed March 10, 1980. While the method of calculating the return date is unclear from the record, it is that date which must govern.

Third, it is claimed that FEPC Rule 4.5 makes no provision for consideration of "responses" and therefore DHR's responses to the requests of Price and Paden should not have been considered. As with the first objection above, Rule 4.5 does not govern, but rather HRC Rule 4.3 which was effective at the time. It makes specific provision for a response by DHR. The Board apparently feels that the responses here—agreement with the complainants—were inadequate; even if this be true, as pointed out above it is not an adjudication on the merits, only an investigatory step.

Fourth, it is claimed that in Paden's case an order of an executive assistant rather than a panel of the HRC was improper. HRC Rule 4.6 provides in substance that if DHR does not oppose the request for review, the executive assistant is specifically authorized to enter the order and is admonished to do so promptly.

The Board's second principal contention is that it was denied due process when it was excluded from the dismissal review process. It is admitted that the Board did not receive copies of the investigators' reports, the notices of dismissal, the requests for reconsideration, or DHR's responses; it did not participate in the reconsideration reviews and was notified only that the charges had been reinstated.

The Board does not make precisely clear just what type of participation it believes it should have had. It admits that full adversary safeguards are not necessary, but insists that the review of dismissals is part of the adjudicatory function and therefore it should share in the proceedings. We have already stated our opinion that until a complaint is in fact issued by DHR, the proceedings are investigatory and not adjudicatory.

This distinction is well settled in the law. Investigation is not to prove a charge but to determine whether one should be lodged; adjudication determines whether the charge has been proved. The distinction was well summed up in *Genuine Parts Co. v. Federal Trade Com.* (5th Cir. 1971), 445 F.2d 1382, 1388:

> "An investigation discovers and produces evidence; an adjudication tests such evidence upon a record in an adversary proceeding before an independent hearing examiner to determine

whether it sustains whatever charges are based upon it. A party under investigation may not contest the discovery and production of evidence in the same manner he may contest the use of that evidence in an adjudication by proper objection, by the introduction of other evidence, and the other safeguards traditional to an adversary proceeding under our system. An investigation does not determine guilt or innocence; that is done at the adjudication, and thus it is there the whole plethora of due process rights designed to insure the fairness of such a determination come to bear."

The Human Rights Act carefully preserved this distinction by creating two agencies: the DHR, which is investigatory, and the HRC, which is adjudicatory. DHR's duties begin when a charge is filed and end when it files a complaint with HRC. HRC's duties begin when the complaint is filed by DHR and assigned to a hearing officer, and end when it issues its order. The request for review presents one of the few instances when DHR and HRC work on the same matter at the same time, but it involves only the agencies; neither the complainant nor the employer take part in the process, except that the complainant may submit supplemental evidence. There is no disposition of the underlying charge and hence no adjudication. It is somewhat analogous to a circuit court's dismissal of an information for lack of probable cause. Nothing prevents the State's Attorney from seeking an indictment from a grand jury on the same essential facts. Neither the information nor the indictment adjudicate the underlying charge.

■ As the Fifth Circuit remarked, due process attaches at the adjudicatory stage. The disappointment of the employer over the reinstatement of charges is understandable, but nothing prevents a vigorous defense at the administrative hearing, and the final safeguard is judicial review pursuant to section 8—111. Ill. Rev. Stat. 1981, ch. 68, par. 8—111.

The order of the circuit court of Sangamon County is affirmed.

Affirmed.

GREEN, P. J., and LEWIS, J., concur.