HABIBEH JABBARI, Complainant-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents-Appellees.

First District (1st Division) No. 87—1761

Opinion filed July 18, 1988.—Rehearing denied September 8, 1988.

228

Alan Rhine, of Chicago, for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Deborah L. Ahlastrand, Assistant Attorney General, of Chicago, of counsel), for respondent Human Rights Commission.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Complainant, Habibeh Jabbari, filed a charge of unlawful discrimination on the basis of a physical disability against her former employer, Ethyl Corporation (Ethyl), before the Illinois Human Rights Commission (the HRC). The HRC adopted and affirmed the decision of the Department of Human Rights (the Department) and dismissed complainant's charge for lack of substantial evidence. For the following reasons, we affirm the decision of the HRC.

The record indicates that on August 19, 1985, complainant, a machine operator, was fired for failing to obey a work order issued by her supervisor. There is conflicting testimony as to the reasons for complainant's failure to obey the order. Initially, in October 1985, complainant filed a grievance form with her union requesting reinstatement with no loss of benefits or back pay. On the grievance form, complainant stated that she had been asked to work next to a member of her family "who she did not get along with," refused to do so, and was terminated. There is no mention in the grievance form of a physical disability which would have prevented her from doing the assigned work.

Subsequently, in January 1986, complainant filed a charge with the HRC, alleging that, in terminating her employment, Ethyl had discriminated against her on the basis of her physical handicap, *i.e.*, orthopedic impairment to her neck, left arm and right shoulder incurred in 1979 and 1981 when a machine fell against her while working at Ethyl. In her charge, complainant alleged that on August 19, 1985, her supervisor told her to work on a machine which her disability prevented her from operating. Complainant further alleged that she had showed her supervisor a doctor's letter regarding her condition, which he just ripped up and threw away. He then fired her for refusing to work on the machine.

At the fact-finding conference held by the Department, complainant stated that because the machine she was asked to work on (machine 201) did not have an automatic door like the machine to which she was normally assigned (machine 202), she could not operate it because of the pain in her arm and neck. Complainant's supervisor stated that he

had asked her to work on machine 201, which requires two operators, because machine 202, on which she usually works, would not start. Complainant allegedly refused to operate machine 201 because she did not get along with the other operator of machine 201, her sister-in-law. When the supervisor told complainant that if she refused to operate machine 201, he would fire her, she still refused. He then asked Betty Wright, the union steward, to join them to explain to complainant that if she did not follow orders, she would be fired. Complainant again refused to work at machine 201 and was fired.

Betty Wright testified at the fact-finding conference that she had heard complainant tell her supervisor that she would not work at machine 201 because she did not want to work with her sister-in-law. Wright explained that when employees were hired, they were told that if they refused to perform a job, they would be fired. Dennis Mascolo, union business agent, testified at the conference that during the grievance hearing, complainant had stated that she had refused to work on machine 201 because she did not get along with her sister-in-law.

Following the fact-finding conference, the Department issued its investigative report to the HRC, recommending that the charge be dismissed for lack of substantial evidence. The following exhibits were attached to the report: (1) respondent's EEO—1 report; (2) complainant's union grievance; and (3) numerous medical reports. Subsequently, the Department issued its notice of dismissal, which informed complainant that she could seek review of the dismissal before the HRC by filing a request for review with the HRC within 30 days.

On January 21, 1987, complainant filed a request for review with the HRC which stated only that: "The decision is wrong." The Department timely responded to complainant's request for review, stating that complainant has been "unable to show how her handicap was a factor in respondent's decision to discharge her or that she was denied an accommodation." Thereafter, the HRC entered its order dismissing complainant's charge for lack of substantial evidence.

Complainant's timely appeal followed. On appeal, complainant contends that the procedures followed by the Department to investigate and to dismiss her charge as set forth in the Illinois Human Rights Act (the Act) (Ill. Rev. Stat. 1985, ch. 68, par. 1—101 et seq.) denied her her constitutional rights to due process and equal protection.

The Act creates a State cause of action for various discriminatory practices based on race, color, sex, handicap, marital status, religion, national origin, age, ancestry, or unfavorable military dis-

charge. (Ill. Rev. Stat. 1985, ch. 68, par. 1—103(Q).) In order to effectuate the goals of the Act, which include equal employment opportunity for employees and protection for employers against unwarranted claims, the legislature established the following procedures to determine the validity of a complainant's charge. Initially, the complaining party must file a charge of discrimination with the Department within 180 days of the alleged discriminatory act by the employer or the charge must be issued by the Department itself under the signature of the Director. (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(A).) After notice to the employer, the Department then conducts an investigation of the charge with the power to subpoena witnesses and documents. (Ill. Rev. Stat. 1985, ch. 68, pars. 7—102(C)(1), (C)(2).) In addition, upon reasonable notice to all parties, the Department conducts a fact-finding conference. (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(C)(4).) The specific purpose of the fact-finding conference is to obtain evidence, identify issues in dispute, ascertain the positions of the parties and explore the possibility of a negotiated settlement of the controversy. (*Chicago Transit Authority v. Department of Human Rights* (1988), 169 Ill. App. 3d 749.) The failure to attend the conference without good cause may result in dismissal of the charge or default against the employer. (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(C)(4).) However, such dismissal or default does not bar a party from seeking review before the HRC. (Ill. Rev. Stat. 1985, ch. 68, par. 8—103.) The notice of dismissal or default is issued by the Director, who notifies the relevant party that a request for review may be filed in writing with the HRC within 30 days of receipt of such notice. (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(C)(4).) Each investigated charge is subject to a confidential report to the Director. (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(D).) Further statutory provisions provide for a formal conciliation conference if the Director determines there is substantial evidence of a violation of the Act (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(E)) and, upon failure to settle or adjust any charge, the Department then prepares and files a written complaint with the HRC (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(F)).

■ Once a complaint is filed with the HRC, the statute provides for notice of a hearing before a hearing officer, amendment of and answer to the complaint, hearing procedures, written findings of fact, decision by the hearing officer and review and rehearing by the HRC. (Ill. Rev. Stat. 1985, ch. 68, pars. 8—103 through 8—107.) The HRC's final order is subject to judicial review in accordance with the provisions of the Administrative Review Law (the ARL) (Ill. Rev. Stat. 1985, ch. 110, par. 3—101 *et seq.*). Upon review, the HRC's findings of

fact are to be held *prima facie* correct and its decision sustained unless the court determines that the findings are contrary to the manifest weight of the evidence. Ill. Rev. Stat. 1985, ch. 68, par. 8—111.

■ In the present case, complainant contends that the procedures utilized by the Department to investigate and dismiss her charge of discrimination deprived her of her property rights without the opportunity to be heard in a manner appropriate to the nature of the case. Specifically, complainant argues that the right to cross-examination, the right to a transcript of the fact-finding conference, and the right to compel production of documents should attach to the fact-finding conference. In response, respondents contend that the changes in procedure sought by complainant would turn every investigation into an adversarial proceeding. In reaching a determination as to any due process claim, the court must address a two-party inquiry: whether the plaintiff has a protectable property interest and, if so, what process is due. (*Lemon v. Tucker* (N.D. Ill. 1985), 625 F. Supp. 1110.) With respect to the first part of the inquiry, in *Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 71 L. Ed. 2d 265, 102 S. Ct. 1148, the Supreme Court held that an employee's right to use the Fair Employment Practices Act's[1] administrative and adjudicative procedures was a property right protected by the due process clause which could not be dismissed by the Department unless there was no substantive evidence to support it. Having determined that the complainant possessed a property right in the right to file a claim under the Act, the next inquiry is what process is due to complainant.

■ It is well recognized that until a complaint is issued by the Department, the proceedings are investigatory and not adjudicatory. (*Board of Governors of State Colleges & Universities v. Illinois Human Rights Comm'n* (1982), 109 Ill. App. 3d 946, 441 N.E.2d 391.) Courts have defined the distinction between the two proceedings as: investigation determines whether a charge should be brought; adjudication determines whether the charge has been proved. (*Genuine Parts Co. v. Federal Trade Comm'n* (5th Cir. 1971), 445 F.2d 1382.) This distinction has been expressly preserved by the Act as evidenced by the legislature's creation of two agencies: the Department and the HRC. The Department is the investigatory agency, whose duties commence when a charge is filed and end when the Department files a complaint with the HRC, the adjudicatory agency. The HRC's duties commence when the complaint is filed by the Department or when a party files a request for review and end when the HRC issues an or-

---

[1]The Human Rights Act superseded the Fair Employment Practices Act.

der. (*Board of Governors of State Colleges & Universities*, 109 Ill. App. 3d 946, 441 N.E.2d 391.) When the Department dismisses a charge for lack of substantial evidence, as in the present case, the dismissal occurs during the investigatory or fact-finding stage. Thus, the issue before this court is whether due process attaches to the investigatory stage.

 This question was directly addressed by the United States Supreme Court in *Hannah v. Larche* (1960), 363 U.S. 420, 4 L. Ed. 2d 1307, 80 S. Ct. 1502. Although *Hannah* balanced a respondent's needs, rather than a complainant's needs, for procedural protections during an investigation by a governmental agency against the government's needs for efficient investigations, we find the Court's analysis of the investigatory and adjudicatory dichotomy applicable to the issue at bar. In *Hannah*, the Court analyzed the constitutionality of rules of procedure adopted by the Commission on Civil Rights pursuant to authority granted by the Civil Rights Act of 1957 and gave a detailed analysis of the difference between the investigatory stage and the adjudicatory stage of an administrative proceeding. The Court stated that when "governmental action does not partake of an adjudication, as for example, when a general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used." (363 U.S. at 442, 4 L. Ed. 2d at 1321, 80 S. Ct. at 1514-15.) After analyzing various phases of governmental investigation, *i.e.,* Federal Trade Commission, Securities and Exchange Commission, the presidential commission and the grand jury, the Court noted that the investigative process of each would be severely disrupted if each investigation were transformed into a trial-like proceeding. (363 U.S. at 443, 4 L. Ed. 2d at 1322, 80 S. Ct. at 1515.) Accordingly, the *Hannah* court held that the rights of discovery, confrontation, cross-examination and other elements of due process attending judicial and quasi-judicial proceedings do not apply in investigative proceedings.

 Relying on *Hannah*, this court in *Klein v. Fair Employment Practices Comm'n* (1975), 31 Ill. App. 3d 473, 334 N.E.2d 370, also addressed the question of procedural protections in the investigatory stage of an administrative proceeding and held:

"[P]laintiff has no constitutional right of participation in the investigation of her charge. Such participation would entitle every complainant to a hearing regardless of the validity of the allegations of one's charge. [Citation.] It would be impossible to conduct an efficient investigation. Such participation is neither required by the Constitution nor by the legislature.

We appreciate plaintiff's concern that a vehicle must exist to enable a complainant to bring to the Commission and ultimately the court's attention the fact that an investigator's report is predicated upon erroneous, incomplete, or no facts. Yet sufficient means do exist through the requirement that a Commission supply written reasons justifying the dismissal of a charge and through the presumed right of the complainant to petition the Commission to reconsider its order. Of course, the ultimate safeguard is plaintiff's right to judicial review." 31 Ill. App. 3d at 483.

We agree with the *Klein* court's rationale. Further, as evidenced by the fact that the Act contemplates conciliation, it is clear that the legislature intended that the investigatory stage not be adversarial. Accordingly, we conclude that complainant's due process rights were not violated during the investigatory stage of the administrative proceeding.

■ Complainant next contends that the procedures used to investigate and dismiss her charge violated her right to equal protection. Initially, complainant contends that a complainant filing a charge with the Department and the respondent against whom the charge is filed are similarly situated because both are protected by the Act. Complainant then predicates her claim of disparate treatment on the ground that a respondent cannot be found guilty as the result of the Department's investigation, yet the complainant's charge can be dismissed after investigation. In our view, this argument exemplifies the erroneous conclusions which can result from the failure to properly distinguish between an investigation and an adjudication. As previously discussed, the latter determines guilt or liability. Therefore, the adjudicatory process is protected by strict constitutional safeguards. The former is merely a fact-finding stage. Thus, to predicate a claim of disparate treatment on two dissimilar situations is inherently illogical and legally unsound. As stated in *Board of Governors of State Colleges & Universities v. Illinois Human Rights Comm'n* (1982), 109 Ill. App. 3d 946, 954, 441 N.E.2d 391, the investigatory stage is "analogous to a circuit court's dismissal of an information for lack of probable cause. Nothing prevents the State's Attorney from seeking an indictment from a grand jury on the same essential facts. Neither the information nor the indictment adjudicate the underlying charge." Similarly, in the present case, the Act clearly provides for review by the HRC of the Department's order and judicial review of the HRC's final order. Moreover, if the alleged discrimination falls within the protections of Title VII (42 U.S.C. §2000e−2 (1982)), provided the

complainant does not seek State judicial review, he or she may file the claim in Federal court. *Kremer v. Chemical Construction Corp.* (1982), 456 U.S. 461, 72 L. Ed. 2d 262, 102 S. Ct. 1883.

■ Complainant further argues that the "fundamental principle, that both parties should be afforded the same procedural rights, is incorporated in the [ARL] which governs contested hearings." Again, complainant is confusing the investigative stage with the adjudication stage. The ARL governs administrative regulatory agencies when they are making determinations of a quasi-judicial nature but not when they are making nonadjudicative, fact-finding investigations. (*Hannah v. Larche* (1960), 363 U.S. at 445, 446, 4 L. Ed. 2d at 1323, 1324, 80 S. Ct. at 1516, 1517.) Accordingly, complainant's analogy is misplaced. For similar reasons, complainant's attempt to analogize the absence of a hearing at the investigatory stage with a hypothetical situation in which only a defendant is allowed to move for summary judgment is also misplaced.

■ Finally, complainant argues that dismissal of her charge without a hearing denies her her day in court. To the contrary, pursuant to the Act, complainant has the right to request review of the Department's decision by the HRC, at which time she would have the opportunity to present evidence which would support a reversal. In the present case, when complainant requested review by the HRC, her sole ground for review was "the decision was wrong." Complainant's failure to take advantage of the right to present facts she felt were missed is not equivalent to the lack of an opportunity to do so. Moreover, complainant also has the right to appeal the Commission's decision to this court, which she has done. In light of the availability of these judicial safeguards, we find complainant's argument that the Act denies her her day in court to be without merit.

Based upon the aforementioned, we affirm the order of the HRC.

Affirmed.

BUCKLEY and QUINLAN, JJ., concur.