STEVE LUCKETT, JR., Appellant, v. THE HUMAN RIGHTS COMMIS-
SION *et al.*, Appellees.

First District (1st Division) No. 1—87—1362

Opinion filed December 29, 1989.—Rehearing denied April 4, 1991.

Edwin F. Mandel Legal Aid Clinic, of Chicago (Gary H. Palm, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, of Springfield, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for respondent.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Steve Luckett, Jr. (Luckett), appeals directly to this court from adverse orders of the Department of Human Rights (Department) and

the Human Rights Commission (Commission), wherein the Department and Commission dismissed his charge, which alleged employment discrimination against Amco Corporation. The questions presented on appeal are: (1) whether the Commission's dismissal of Luckett's discrimination charge for lack of substantial evidence was against the manifest weight of the evidence; and (2) whether the Commission's adoption of the Department's finding of lack of substantial evidence denied Luckett's right to procedural due process.

The record below reveals the facts as follows. Luckett, a black male, was hired by Amco Corporation as a stockroom keeper on December 28, 1982. Luckett had a history of absenteeism and had received several oral and written warnings from Amco. On the warning notice dated February 2, 1984, Amco stated that Luckett had missed at least six days and had been late at least six times in the past few months. On a notice dated August 30, 1984, Luckett was cited for 26 excused and unexcused absences in the previous year. Thereafter, he was suspended. In a memo dated September 5, 1984, which stated that Luckett's absences had become excessive, Amco also advised him that a single absence in the next 30 days or two absences in the next 60 days would result in termination. Additionally, Amco issued Luckett more warnings on October 20, 1984, February 11, 1985, and March 7, 1985, regarding absenteeism and tardiness. Luckett also received several warning notices regarding his employment at Amco for deficient work performance.

On May 10, 1985, Luckett received his final warning notice, which constituted the notice of termination for "defective work," citing, "[m]iscounts on 5/2/85. Employee was given 3 days off for prior miscounts. Employee to be terminated."

On or about June 19, 1985, Luckett filed a charge of discrimination with the Department pursuant to the Human Rights Act (HRA) (Ill. Rev. Stat. 1983, ch. 68, par. 1–101 *et seq.*), regarding his discharge on May 10, 1985. In the charge, Luckett alleged he had been discriminated against on account of his race in that Amco discharged him and other blacks and replaced them with Hispanic employees. He also alleged that the reason given for his termination, excessive absenteeism, was merely pretextual. Luckett alleged that he had requested to be off from work on May 3, 1985, two weeks in advance of that date, and that upon his return to work, he was given two employee warnings and terminated. He alleged that a nonblack, Ramon Castro, had requested time off from work and was granted the time but was not terminated upon his return. Luckett further alleged that

"non-black employees such as Ramon are off work as much or more than I had been and no actions are ever taken against them."

After conducting a fact-finding investigation, the Department in its investigation report dated April 14, 1986, determined and recommended a finding of lack of substantial evidence regarding the allegations in Luckett's charge. The report stated that: (1) Luckett was absent and tardy more often than his nonblack comparison; (2) Luckett was not terminated for requesting time off, but because he took the day off without permission, coupled with his history of absenteeism; and (3) the documents revealed that Luckett's allegation that Amco was discharging blacks and replacing them with Hispanics was unfounded.

On August 7, 1986, the Department notified the parties that based upon the investigation report, it had determined there was not substantial evidence to support the allegations of the charge and the charge, therefore, was dismissed in accordance with section 7—102(D) of the HRA. (Ill. Rev. Stat. 1983, ch. 68, par. 7—102(D).) On September 11, 1986, Luckett filed a request for review with the Commission. On October 10, 1986, Luckett filed his "Argument and Materials in Support" of the request for review, maintaining that substantial evidence existed to support the charge. Amco, in its response, pointed out a number of factual inconsistencies and inaccuracies in Luckett's memoranda and requested that all relief be denied.

On February 19, 1987, the Commission adopted and affirmed the decision of the Department and entered an order dismissing Luckett's charge for lack of substantial evidence, citing several findings of fact and reasons in support of its decision. Luckett has appealed directly to this court pursuant to section 8—111(A)(1) of the HRA. Ill. Rev. Stat. 1983, ch. 68, par. 8—111(A)(1).

Initially, we turn our attention to the motions filed by the parties to this appeal, which were taken with the case. Since oral argument in this matter, both parties have filed several motions to file additional or supplemental authority. These motions primarily concern the interpretation of and application to be given to the several rulings in the case of *Lemon v. Tucker* (N.D. Ill. 1988), 695 F. Supp. 963 (*Lemon II*), related to *Lemon v. Tucker* (N.D. Ill. 1985), 625 F. Supp. 1110 (*Lemon I*), a class action suit filed in Federal court, in which Luckett was a named plaintiff. Hence, before we address the other issues raised by Luckett, we turn our attention to the applicability, if any, of the *Lemon v. Tucker* findings to the resolution of the case at bar.

In *Lemon I*, the plaintiffs filed a two-count complaint challenging the constitutionality of the procedures for processing charges under

the HRA. Initially, plaintiffs had sought declaratory and injunctive relief against the defendant, maintaining due process and equal protection violations. However, pursuant to a motion to dismiss filed by the defendant, the court dismissed count II, the equal protection claim, but declined to dismiss count I, the due process claim. *Lemon*, 625 F. Supp. at 1117-18.

Essentially, plaintiffs charged that the defendant deprived them of their State-created property interests in their HRA actions without due process of law. Specifically, count I alleged that the Department's procedures were deficient in the following respects:

(1) Complainants do not have the right to have an adjudicatory hearing.

(2) Complainants do not have the right to know the evidence against them.

(3) *Ex parte* contacts are permitted.

(4) Complainants do not have the right to cross-examine respondent's witnesses.

(5) Complainants do not have the right to present all evidence in their favor.

(6) Complainants do not have the right to make or have made a verbatim record of testimony or to have a decision made solely on the basis of the record.

(7) Complainants do not have the right to compulsory process for the production of witnesses or documents.

(8) Complainants do not have the right to notice of their rights under the due process clause of the fourteenth amendment to the United States Constitution under the HRA, under HRA rules and regulations, and under HRA policies and practices.

The district court concluded that the procedures afforded complainants under the HRA were sufficiently offensive to due process to state a valid cause of action under section 1983 of the civil rights statute and to survive a motion to dismiss. The court held that the "question here is the adequacy of the IHRA investigative procedures." (*Lemon*, 625 F. Supp. at 1115.) Subsequently, the parties engaged in discovery and brought cross-motions for summary judgment on the due process claim. See *Lemon*, 695 F. Supp. 963.

In *Lemon II*, plaintiffs sought a ruling that defendant was depriving them of due process in two specific ways:

(1) by dismissing their discrimination charges without allowing them to view the evidence submitted by the respondent; and

(2) by dismissing the discrimination charges which involve credibility determinations without a full evidentiary hearing.

Defendant's cross-claim alleged that due process for this type of claim was minimal and that the procedures guaranteed by the HRA, especially those added by the 1987 amendments, were sufficient to satisfy Luckett's due process rights.

The court generally concluded that the HRA's amended procedures did not deny plaintiffs due process. Then, the court proceeded to an in-depth analysis of plaintiffs' claims. First, the court recognized that defendant must satisfy due process requirements. Next, the court considered what the due process clause requires in this case by reiterating Judge Getzendanner's conclusions in light of the formula enunciated in *Mathews v. Eldridge* (1976), 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893. We decline to rereview this analysis as it is expressed in great detail in *Lemon II*, which quotes extensively from *Lemon I*. Suffice it to say that the *Lemon II* court concluded that those class members whose claims were subject to the procedures existing prior to the September 24, 1987, amendments to the HRA, and who were never afforded an opportunity to present reasons why their charges should not be dismissed, were denied due process of law. The court there ordered that all such persons' claims should be reopened.[1]

The court held that under the new amendments, which took effect September 24, 1987, and established a "pleadings" procedure, complainants were assured of two protections which they were previously denied. Those added protections are access to a verified response by the respondent to the claimant's charge and claimant's right to reply to respondent's defenses and present reasons why claimant's charge should not be dismissed. (Ill. Rev. Stat. 1987, ch. 68, par. 7—102(B).) Moreover, a claimant can supplement his reply at any time and present additional information to the investigator.

The court did not agree with plaintiffs' claim that they were entitled to access to all documents submitted to the Department by the Department and Commission. Nor did the court completely agree that claimants were entitled to some discovery of factual details, on the basis that the case there addressed post-deprivation procedures in which the deprivation did not cause an immediate change in the status quo. The court concluded that claimants, although deprived of a post-deprivation evidentiary hearing, still have an opportunity to challenge the Department's factual determinations before the Commis-

---

[1] By order dated March 8, 1989, the court modified its previous order of September 21, 1988, to strike the retroactive relief suggested therein.

sion, and if dissatisfied with the Commission ruling, to appeal directly to the Illinois Appellate Court.

The last claim urged by the plaintiffs before the *Lemon II* court, that in the case of charges where material credibility disputes arise, complainants are entitled to a full evidentiary hearing; *i.e.*, an opportunity to cross-examine respondent's witnesses, was similarly rejected. The court found that the opportunity for any Department finding of lack of substantial evidence to be reviewed by both the Commission and the Illinois Appellate Court adequately guards against the Department making erroneous determinations based on credibility issues. (*Lemon*, 695 F. Supp. at 972.) Having reviewed the *Lemon v. Tucker* decisions, we now briefly address the parties' arguments thereto. Respondents first assert that *Lemon II* has *res judicata* and collateral estoppel effect on this court, and thus, Luckett's claims should be barred. Luckett first counters that this claim is not barred because the *Lemon v. Tucker* decision is not final. We agree with Luckett. In *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 499 N.E.2d 1373, our supreme court held that a decision is not final where the potential for review has not been exhausted. The record here reveals that the *Lemon v. Tucker* plaintiffs filed a notice of appeal on July 19, 1989. Thus, the potential for review of the matter has not yet been exhausted.

In addition, contrary to the parties' dispute, the *Lemon II* decision, even if it were to be considered final, did not seek to grant relief to any claim pending in the Illinois Appellate Court. The parties disagree whether or not the order entered on June 22, 1989, which further clarified the March 8, 1989, order and September 21, 1988, opinion bars this court's consideration of Luckett's due process claims. The June 22, 1989, order provides that "[t]he court clarifies its order as follows. The March 8, 1989, order denying retroactive relief encompasses all claims that have proceeded beyond the investigative stage within the Department. Those claims, if any, which are still pending within the Department at the investigative stage, should be afforded the procedures of the amended act. All other claims are not entitled to relief."

Although there are several interpretations to be given to the June 22, 1989, order, we believe the better interpretation encompasses our long-established principle that the doctrines of federalism and comity require the Federal district court to decline to issue orders that affect the Illinois Appellate Court's enforcement of the fourteenth amendment. See *District of Columbia Court of Appeals v. Feldman* (1983), 460 U.S. 462, 75 L. Ed. 2d 206, 103 S. Ct. 1303. Luckett has pre-

served his due process argument during the pending appeal before this court. Thus, although we may consider the instant case in light of the pronouncement in *Lemon II*, we are free to reach our own decision whether Luckett's individual rights to due process have been violated. (See *Pennzoil Co. v. Texaco, Inc.* (1987), 481 U.S. 1, 95 L. Ed. 2d 1, 107 S. Ct. 1519 (Federal court has no authority to issue orders directing how State courts ought to rule).) Accordingly, based upon the factual matrix in the instant case, our review of the record, the pronouncements in *Lemon II* and other established principles of law in Illinois, we believe that Luckett was not denied due process of law.

In essence, Luckett has set forth on this appeal the same arguments involving alleged due process of law violations which have been discussed and dismissed by this court (see *Jabbari v. Human Rights Comm'n* (1988), 173 Ill. App. 3d 227, 527 N.E.2d 480; *Glassworks, Inc. v. Human Rights Comm'n* (1987), 164 Ill. App. 3d 842, 518 N.E.2d 343, *appeal denied* (1988), 119 Ill. 2d 556, 522 N.E.2d 1244; *Castillo v. Human Rights Comm'n* (1987), 159 Ill. App. 3d 158, 512 N.E.2d 72), and the Illinois Federal district court in the aforementioned *Lemon v. Tucker* cases. Luckett asserts that: (1) he was denied a fair forum to present reasons why he was wrongly discharged; (2) he was denied access to information which might have revealed substantial evidence that Amco discriminated against him; (3) he was denied permission to examine documents submitted by Amco to the Department investigator; and (4) the Department erred by refusing to investigate further the incident of May 3 to determine whether or not he was given the day off. Luckett further contends that the Department's rejection of all of his allegations and its acceptance of all of those made by Amco deprived him of due process.

Finally, Luckett argues that the Commission committed reversible error because of its failure to order the Department to conduct a hearing and submit additional information on the basis that, had the Commission ordered a fact-finding hearing or demanded that the Department submit more data, it would have been in a better position to solve several of the credibility disputes it improperly resolved.

The Department and Commission counter that the procedures of the Commission do not violate any due process rights of Luckett.

At the outset, we note that during the pendency of this appeal, Illinois amended the HRA and such amendments took effect on September 24, 1987. As noted above, during the pendency of the instant appeal, the *Lemon II* court considered the issue whether the State's method of considering civil rights violations pursuant to the HRA denied complainants named in the class due process of law. Also, as pre-

viously discussed, *Lemon II* concluded that the class members were not deprived of due process even though they were unable to review Department files and documents submitted by the Department and Commission; receive a full evidentiary hearing; or cross-examine the Department and Commission's witnesses, where the administrative investigation provided for new "pleadings" procedures, allowed amendments at any time during the investigation and granted complainants a meaningful opportunity to present their side of the story.

Thus, by analogy, we can readily dismiss that part of Luckett's argument which involves access to information and examination of records. Moreover, our court has held that all of the due process rights guaranteed in judicial and quasi-judicial proceedings do not apply to the investigatory stage of an employment discrimination charge before the Department (see *Jabarri*, 173 Ill. App. 3d 227), and that a party alleging a charge of discrimination pursuant to the HRA is not automatically entitled to an evidentiary hearing before the Commission to determine if substantial evidence exists to support the charge. See *Castillo*, 159 Ill. App. 3d 158.

Hence, the crux of our determination concerns (1) whether Luckett was given a fair forum to present reasons why he was wrongly discharged; and (2) whether the Department's refusal to investigate further the incident of May 3, 1985, was an erroneous credibility determination without an evidentiary hearing. The *Lemon II* court also addressed these issues and concluded that (1) the previous method of considering civil rights violations denied complainants due process where they were not given an opportunity to explain why the charges should not be dismissed at any point in the proceedings beyond the original charge; and (2) the opportunity for administrative and State judicial review guards against the Department making erroneous witness credibility determinations without an evidentiary hearing during the investigatory stage. Accordingly, we will address each question separately as it pertains to Luckett.

First, as to the issue whether or not Luckett had an opportunity to explain why his charge should not have been dismissed, we believe he was given and exercised several opportunities to do so. The record demonstrates that Luckett had an opportunity to participate in the investigatory stage of the proceedings where he proffered questions to the Department to be utilized in its fact-finding process. He requested and was granted leave to file supporting documents to the Commission for the request for review. He then submitted memoranda and his own affidavit explaining why his charge should not be dismissed for lack of substantial evidence to the Commission. Hence,

██ that unlike most of the members in the *Lemon v. Tucker* class, who neither availed themselves of any opportunity to present their side of the story beyond the original charge, nor preserved any due process argument for review before the State court, Luckett was given a fair forum to present reasons why his charge should not be dismissed for lack of substantial evidence. *Lemon v. Tucker* stands for the proposition that an investigative procedure may be defective if the investigative tribunal, as part of its procedure for determining whether substantial evidence exists, does not allow complainants an opportunity to present to the tribunal reason why substantial evidence exists. The court there concluded that the class as a whole was denied such an opportunity. In the case at bar, we recognize that Luckett may not have been given an opportunity to present reasons why substantial evidence existed at the investigatory stage of the process before the Department. However, we note that he was given this opportunity at the review stage before the Commission. It is not fatal to this discussion that this opportunity was available during the Commission's request for review instead of the Department's fact-finding investigation, because review by the Commission is a *de novo* review and the Commission is not bound by the factual determinations made at the Department level.

██ Second, we believe that the Department's decision not to investigate further whether Luckett took an unauthorized absence on May 3, 1985, as advocated by Amco, or had permission to be off from work on that date, as advocated by him, was not an erroneous credibility determination. The record reflects that during the fact-finding conference, Tom Neary, vice-president, Amco Corporation, stated that the company never authorized Luckett to be absent from work on May 3, 1985, and, in fact, advised against such action in light of his attendance record and because he was not entitled to any additional days off. Luckett never stated or submitted any evidence to substantiate his "presumption" that he could be off from work on May 3, 1985. His argument that he thought he had the day off must fail. Because Luckett was able to receive his check early and his superior told him to "have a good vacation" when he came in to the office on the morning of May 3, 1985, to pick up his paycheck are neither evidence that Luckett's employer authorized his absence on that date nor facts which rise to the level to support Luckett's view that a credibility dispute existed. The record demonstrates that Amco's policy allowed employees to receive their checks early, if they requested to do so, on one or two occasions. The record also reflects that Luckett was scheduled to work on the night shift. Thus, any remarks made by a supe-

rior during the day shift have no bearing to Luckett's belief that he did not have to report to work later on that day. Even more important is the fact that Luckett could not produce any evidence through proposed testimony or documents to support his position. In the charge, Luckett never alleged that he had the day off. However, in his affidavit submitted to the Commission, he averred that he believed he had the day off. This attempt to raise the issue to one of credibility did not satisfy the Commission as being valid and neither does it satisfy this court as being valid. Accordingly, we conclude that the Department's finding that Luckett's absence from work on May 3, 1985, was unauthorized was not an erroneous determination based on a credibility issue. Furthermore, as the *Lemon II* court noted, "the concept of 'substantial evidence' encompasses the possibility that claimant and respondent will have differing versions of an event." *Lemon*, 695 F. Supp. at 972.

We next consider whether the Commission's decision to dismiss Luckett's discrimination action for lack of substantial evidence is against the manifest weight of the evidence. We believe the Commission's decision was correct.

To support his contention, Luckett specifically argues that the Commission's decision was arbitrary and capricious, he established a *prima facie* case of discrimination, there was no legitimate reason for his discharge and the reasons given by Amco were merely pretextual.

First, Luckett contends that under *Klein v. Fair Employment Practices Comm'n* (1975), 31 Ill. App. 3d 473, 334 N.E.2d 370, the Commission's function is not to determine the weight of the evidence but only to determine whether there was enough evidence to justify the filing of a complaint. He contends that during the investigation the Department improperly acted as a finder of fact and a weigher of the credibility of the witnesses' testimony. As noted earlier, we find this argument to be without merit.

Second, Luckett argues that the Commission erred when it determined he had not made out a *prima facie* case of employment discrimination in a discharge case. Luckett states that he met all of the requirements as set forth in the *In re Williams* (1985), 18 Ill. HRC Rep. 89, 99 in that: (1) he was a member of a protected group; (2) he was doing satisfactory work; (3) he was discharged despite the adequacy of his work; and (4) after his discharge, the position remained open and the respondent continued to seek applicants with his qualifications. Luckett concedes that he had an attendance problem early on during his employment; however, he asserts that he took corrective measures and greatly improved his attendance in line with company

policy. Thus, he maintains there was no reason for Amco to terminate him.

Next, Luckett argues that once he made out his *prima facie* case of discrimination, the burden shifted to Amco to show the discharge was for a legitimate and nondiscriminatory reason under the United States Supreme Court decision in *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089. Luckett contends it was error for the Commission to dismiss his charge because neither the Department's investigation nor Amco's evidence revealed an admissible, legitimate, nondiscriminatory reason for his discharge. To support this contention, Luckett argues that the Department interviewed only one witness and then concluded Luckett's absence on May 3, 1985, was unauthorized. He maintains that the Commission should have held a public hearing to determine whether the absence was excused.

Luckett finally argues that even if Amco articulated a legitimate, nondiscriminatory reason for his discharge, the proffered reasons were merely pretext to cover its discrimination.

The Department and Commission contend that the dismissal of Luckett's charge was not against the manifest weight of the evidence and that the factual determinations made by it are clearly supported by the evidence that Luckett did not make out a *prima facie* case of racial discrimination involving discharge for violation of work rules. Respondents assert that Luckett did not demonstrate that he did not violate an employer rule, or that if he did violate a rule, white employees who were engaged in similar acts were not punished similarly.

■ The HRA vests the Commission with jurisdiction to adjudicate cases brought pursuant to it, which includes subject matter jurisdiction of charges involving racial discrimination by employers. (Ill. Rev. Stat. 1983, ch. 68, pars. 1—102(A), 1—103(D), 2—102(A), 7—101(B).) Under the HRA, the Commission's findings of fact must be sustained unless the reviewing court determines that such findings are against the manifest weight of the evidence. (Ill. Rev. Stat. 1983, ch. 68, par. 8—111(A)(2).) Moreover, judicial review under the HRA is to be in accordance with the Administrative Review Act (Ill. Rev. Stat. 1981, ch. 68, par. 8—111(A)(1)) which provides that an agency's findings are to be taken as *prima facie* true (Ill. Rev. Stat. 1981, ch. 110, par. 3—110), unless a contrary result is clearly evident. See *Clark Oil & Refining Corp. v. Golden* (1983), 114 Ill. App. 3d 300, 448 N.E.2d 958.

■ When analyzing claims of discrimination under the HRA, Illinois courts have looked to the standards applicable to analogous Federal claims. (See *Valley Mould & Iron Co. v. Human Rights Comm'n*

(1985), 133 Ill. App. 3d 273, 478 N.E.2d 449.) The rule follows the *Mc-Donnell-Douglas* analysis under which the employee first must prove by a preponderance of the evidence a *prima facie* case of unlawful discrimination. (*Burdine*, 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089.) The employer then must set forth a legitimate nondiscriminatory reason for its decision to rebut the presumption of unlawful discrimination. If the employer is successful, the presumption of unlawful discrimination no longer is present in the case.

The employee then must prove by a preponderance of the evidence that the reason offered by the employer was not the true reason underlying its decision, and that it is only a pretext. (See *Kraft, Inc. v. City of Peoria* (1988), 177 Ill. App. 3d 197, 531 N.E.2d 1106.) This burden merges with the employee's ultimate burden of proving whether the employer engaged in unlawful discrimination. See *Village of Oak Lawn v. Human Rights Comm'n* (1985), 133 Ill. App. 3d 221, 478 N.E.2d 1115.

We have reviewed the record below, and in applying the foregoing factors to the instant case, we find there is adequate support for the Commission's findings that Luckett did not make out a *prima facie* case of unlawful discrimination. Assuming *arguendo* that he did, we believe that the employer set forth a legitimate, nondiscriminatory reason for his discharge and that Luckett was unable to prove that the proffered reason was only a pretext for unlawful discrimination.

The administrative record before the Department indicates that Luckett was issued warning notices for absenteeism on no fewer than six occasions and was given several warnings for deficient work performance. He was warned that he would be terminated if the absenteeism and tardiness did not improve. Consequently, the record supports the Commission's conclusion that "[c]omplainant was discharged for taking an unauthorized absence from work when he already had been warned by respondent that his attendance and tardiness record was unacceptable."

Luckett was well aware of the company policy that such behavior constituted conduct that would result in termination. He had received numerous verbal and written warnings regarding his poor work performance and had been suspended a few weeks prior to his termination for the same "defective work" citation listed on the final warning.

Luckett's argument that it was reasonable for him to assume he had permission to take May 3 off because he never received a direct answer to his request to do so and his check was available on that morning is unpersuasive. Respondent conducted an investigation and

made its factual determination that "complainant might have misunderstood respondent when he understood respondent gave him a vacation day in early May, 1985." It is well within the province of the Commission to review and weigh conflicting evidence in illegal discharge actions, whether it is at the preliminary level or at a later stage. (See *Sanders v. United Parcel Service* (1986), 142 Ill. App. 3d 362, 491 N.E.2d 1314.) In addition, whether or not Luckett was given permission to be off from work on May 3, 1985, is irrelevant because he failed to demonstrate that he was treated differently from similarly situated nonblack employees. There was no showing that a nonblack in the same situation; *i.e.*, one who had a dispute about permission to be absent from work and had a record of poor attendance and performance, was treated differently from Luckett. Moreover, "the fact that complainant took this unauthorized vacation day *** does not corroborate that his race, black, was a factor in that discharge decision.

The administrative record further reflects that Mr. Castro, a nonblack, was not treated differently from Luckett, nor was he an appropriate comparative. The evidence reflects that: (1) Mr. Castro did not take any long leave of absence at any time in 1985 prior to his termination; (2) he had not received two warning notices, both for absences; and (3) he was not discharged for insubordination.

Moreover, Amco's EEO-1 reports, also a part of this record, reflect that Amco's work force included a proportionate number of blacks. The reports do not reflect that Hispanics were hired to replace Luckett or other blacks as alleged in the charge.

The appellate court must accept the determination of the Commission absent a clear abuse of discretion (see *Board of Directors, Green Hills Country Club v. Human Rights Comm'n* (1987), 162 Ill. App. 3d 216, 514 N.E.2d 1227), and it is not within the province of the reviewing court to overturn the decision of the Commission by looking at the sufficiency of proof, unless such decision was contrary to the manifest weight of the evidence. (See *Burnham Hospital v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 999, 467 N.E.2d 635.) Accordingly, having found there is substantial evidence in the record to support the Commission's contentions and findings of fact that Luckett initially did not make out a *prima facie* case of unlawful discrimination where he violated the company standards by his excessive absenteeism and tardiness and that even if such a case did exist, the employer's articulated reason for discharge of Luckett was not a pretext for unlawful discrimination in light of its EEO-1 reports and other available documents, we conclude that the Commission's dismissal of Luckett's

charge for lack of substantial evidences was not arbitrary or capricious or against the manifest weight of the evidence and therefore affirm the administrative decision.

Order affirmed.

BUCKLEY* and O'CONNOR, JJ., concur.

---

*Justice Buckley participated in this opinion after the resignation of Justice Quinlan, who had participated in the oral argument. Justice Buckley has read the briefs and listened to a tape of oral argument.