# Illinois Official Reports

## Appellate Court

---

### *Robelet v. Police Pension Fund*, 2017 IL App (2d) 170306

---

| | |
|---|---|
| Appellate Court Caption | VICTOR ROBELET, Plaintiff-Appellant, v. THE POLICE PENSION FUND OF THE CITY OF CRYSTAL LAKE, ILLINOIS; THE BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF THE CITY OF CRYSTAL LAKE, ILLINOIS; and THE CITY OF CRYSTAL LAKE, ILLINOIS, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-17-0306 |
| Filed | November 15, 2017 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 16-MR-581; the Hon. Thomas A. Meyer, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas F. McGuire, of Hawthorn Woods, for appellant.<br><br>Mark S. McQueary and Richard J. Reimer, of Reimer Dobrovolny & Karlson LLC, of Hinsdale, for appellees Police Pension Fund of the City of Crystal Lake and Board of Trustees of the Police Pension Fund of the City of Crystal Lake.<br><br>Yvette A. Heintzelman and Roxana M. Crasovan, of Clark Baird Smith LLP, of Rosemont, for other appellee. |

JUSTICE SPENCE delivered the judgment of the court, with opinion. Justices McLaren and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Victor Robelet, appeals from the trial court's order affirming the decisions of defendant, the Board of Trustees of the Police Pension Fund of the City of Crystal Lake (Board), to deny his motion to continue the hearing on his application for a line-of-duty disability pension, to deny his motion to reconsider, and to dismiss his claim for want of prosecution. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On May 6, 2015, Robelet filed with the Board an application for a line-of-duty pension. He was later terminated from his job as a police officer. Robelet was initially represented by attorney Raymond Garza for both his pension application and his grievance arbitration against the City of Crystal Lake (City) on a disciplinary matter.

¶ 4    On July 21, 2015, the City filed a motion to intervene in the pension proceeding, and the Board granted the motion on September 28, 2015, over Robelet's objection. The City was given 28 days to turn over its initial exhibits to Richard Reimer, the Board's attorney, and to Garza. It was also given 14 days after receiving the final independent-medical-examination reports to disclose to Reimer and Garza any additional exhibits or witnesses.

¶ 5    On June 1, 2016, the Board sent Garza and the City copies of the documents on which it intended to rely, subject to any objections. The parties were allowed to present additional evidence if they first turned over copies no later than 10 days before the start of the hearing.

¶ 6    On July 9, 2016, attorney Thomas McGuire sent a letter to the arbitrator, stating that Robelet had retained him to substitute for Garza in the grievance arbitration hearing scheduled for August 4 and 5, 2016. He stated that he could not be prepared to represent Robelet on those dates due to his "volume of professional commitments," and he requested that the arbitration be postponed to any date after September 14, 2016.

¶ 7    On August 4, 2016, McGuire sent a letter to Reimer, stating that he was unprepared to represent Robelet on the date set for the pension hearing to commence, August 15, 2016, due to ongoing medical issues. He asked that the Board continue the hearing to a date after September 15, 2016, at which point, he believed, his medical problems would be corrected or diminished. McGuire also asked that the Board send him copies of all the documents in its possession relating to the case.

¶ 8    The following day, on August 5, 2016, Reimer sent a letter to McGuire, stating that the Board had "made numerous efforts to schedule [the pension hearing] for a date agreeable to all parties and counsel," to no avail. He stated that the hearing was set for August 15, 2016, that the City had objected to continuing the matter, and that he did not have the authority to grant the request for a continuance. Reimer stated that the hearing date was scheduled before McGuire had filed his appearance and that he should not have accepted the case if he could not represent Robelet on the scheduled hearing date. Reimer stated that the Board would consider

the request for a continuance at the beginning of the hearing, but if the request were denied, Robelet would be expected to put on his case-in-chief on that date. Finally, Reimer stated that all of the relevant evidence had been given to Robelet via Garza and that the Board would not be providing another set of copies.

¶ 9   On August 7, 2016, Garza sent McGuire an e-mail briefly discussing his "thoughts and impressions" on how he was going to proceed with the case before he was dismissed. He also stated that he was available to answer any questions that McGuire might have.

¶ 10   On August 10, 2016, the City sent McGuire copies of all of the documents it had produced with respect to Robelet's case, including videos.

¶ 11   On August 12, 2016, McGuire e-mailed to the Board via Reimer a formal motion to continue. McGuire stated that, in agreeing to represent Robelet, he considered that Robelet no longer wished to be represented by Garza; Robelet had not previously requested a continuance; although McGuire had been experiencing health problems, he anticipated being able to represent Robelet by September 15, 2016; and a continuance would not prejudice the Board. McGuire further stated that he was not certain that he had received "true and complete copies" of all documents from Garza and was not certain that relevant City documents had been furnished to Robelet.

¶ 12   On the August 15, 2016, hearing date, McGuire appeared without Robelet. Reimer stated that the Board had been trying to set the matter for a hearing since April 2016. Reimer had proposed the dates of June 22 and 23, 2016, but Garza had a trial and was not available. The Board was also not able to set the hearing for July because Garza was out of town. Reimer stated that on July 25, 2016, the Board sent notice that the hearing would take place on August 15 and 17, 2016.

¶ 13   The City stated that it sent McGuire all of its documents on August 10, 2016. McGuire replied that he had been out of the office quite a bit, though not due to his physical problems, so he did not know whether the documents had been sent. He had not viewed them, though someone from his office might have downloaded them. He also did not know if he had all of the documents that the Board had sent to Garza; he had received "some" material from Garza. Reimer stated that the Board had sent Garza a USB drive that had everything on it, and McGuire stated that he had received a USB drive.

¶ 14   McGuire stated that Robelet had asked him to substitute for Garza, who had a contract to represent union members. McGuire learned that the union contract required a union lawyer, so Garza represented Robelet in the grievance arbitration. However, on August 3, 2016, McGuire agreed to represent Robelet in the pension matter. McGuire urged Robelet to stay with Garza, but Robelet was not happy with Garza's representation. McGuire took the case due to his "ego" and because he thought he could fulfill his responsibilities. McGuire took a "calculated risk" and instructed Robelet not to appear at the hearing so that it would be more difficult for the Board to decide to go ahead with the hearing.

¶ 15   McGuire stated that, physically, he was working on "about four cylinders out of eight" on a good day. He took the case because "hope springs eternal" and he had a reasonable expectation that he would improve and because Robelet's saying he wanted McGuire's representation was "somewhat the ego trip." A Board member requested an affidavit that a medical condition required McGuire to request a continuance, and McGuire stated that he would provide one, "recogniz[ing] it would be under oath, subject to the penalty of perjury."

¶ 16    The Board denied McGuire's motion for a continuance to September 2016 but stated that it was willing to continue the hearing to the previously scheduled date of August 17, 2016, at 2 p.m. McGuire discussed the upcoming hearing and conferred with the City to make sure certain witnesses would be available to testify on that date. The entire hearing on August 15 lasted about three hours.

¶ 17    On August 16, 2016, McGuire sent a letter to the Board via an e-mail to Reimer, asking that the Board reconsider its denial of his request to continue the hearing to September 2016. He stated that when he arrived home at about 5 p.m. on August 15, 2016, his wife reminded him that he had two doctor appointments scheduled for August 17, 2016. The first was scheduled for 11:15 a.m. in Arlington Heights, and the second was scheduled for 12 p.m. in Northbrook. He realized that he could not attend both at the scheduled times, so he rescheduled the second appointment for later the same afternoon[1] so that he could see both doctors on the same day. McGuire was not willing to "jeopardize [his] recovery from [his] present ongoing ailments by cancelling either of the" appointments, so he would not be able to attend the 2 p.m. hearing on August 17, 2016.

¶ 18    McGuire attached to his letter a notarized statement listing his doctors and medications. He further stated that on August 16, 2016, at 4:10 p.m., he received additional documents from Reimer and had not had the opportunity to confer with Robelet about them.

¶ 19    On August 17, 2016, the Board convened for the scheduled hearing. Neither McGuire nor Robelet was present. Counsel for the City telephoned McGuire, who stated that he was at a doctor's office and would not be present. He had also directed Robelet not to attend. Reimer stated that his office manager had called McGuire the previous day at about 2:30 or 3 p.m. to let him know that they were sending duplicate exhibits, but McGuire did not state at that time that he had doctor appointments or that he was going to file a motion for a continuance.

¶ 20    The City requested that the case be dismissed, and the Board granted the motion. In its written order, it stated as follows. McGuire agreed to represent Robelet in the matter, knowing that it was set for hearing on August 15 and 17, 2016. However, citing an ongoing medical condition, McGuire filed a motion to continue the August 15, 2016, hearing date, saying that he would not be ready to represent Robelet. The City objected and moved to dismiss the matter. On August 15, 2016, McGuire appeared alone before the Board, admitting that he told Robelet not to appear on that date. McGuire argued his motion to continue during the several-hour hearing. He conceded that he agreed to represent Robelet knowing the hearing dates, and he admitted that he took the case due to his " 'ego.' " The Board denied McGuire's motion to continue but, as a courtesy, set the matter for hearing on August 17, 2016. At no time during the August 15, 2016, hearing did McGuire indicate that he would be unable to attend the August 17, 2016, hearing due to any previously scheduled doctor appointment. During the early afternoon of August 16, 2016, Reimer's office manager had a conversation with McGuire about the delivery of documents, and McGuire did not mention any doctor appointment. Then, at 5:50 p.m., McGuire e-mailed a letter again seeking to continue the August 17, 2016, hearing. The letter indicated that the appointments were brought to his attention the prior evening, but he provided no explanation for his delay in communicating the information to the Board. He also did not explain why the appointments could not be rescheduled. Rather, the letter seemed to indicate that he intentionally scheduled one of the appointments to conflict with the time of

[1]In his letter, McGuire lists the time of the rescheduled appointment as both 2 and 2:30 p.m.

the hearing. McGuire attached to the letter what he styled as an affidavit, but it was not actually an affidavit because it was not executed under oath nor did it say that the statement was made subject to the penalties of perjury.

¶ 21 The Board continued as follows. Robelet was "not free to help himself to a continuance without justification," and he did not have good cause for a continuance. Robelet was represented by able and experienced counsel before retaining McGuire, and McGuire knew that the hearing was set for the dates indicated. If McGuire was unable to represent Robelet on the scheduled hearing dates, he should not have accepted the representation and Robelet should have retained counsel who would be ready on the hearing dates. The Board had now convened twice to hear the matter with Robelet appearing neither time, seemingly at McGuire's suggestion. Therefore, the Board found that Robelet had failed to prosecute his claim and had abandoned it, and the Board granted the City's motion to dismiss his application for a disability pension.

¶ 22 Robelet filed a complaint for administrative review on September 13, 2016. The trial court issued a memorandum decision on March 31, 2017, affirming the Board's decision. We summarize the trial court's findings. When McGuire argued his motion to continue, there was no mention of the conflict in McGuire's schedule for August 17, 2016. Therefore, the Board's failure to grant a continuance based on that conflict could not have been an abuse of discretion. On August 16, 2016, McGuire informed the Board of the conflict, but he failed to support his claim with an affidavit or other documentation. Then, on August 17, 2016, Robelet and McGuire failed to appear to request a continuance or proceed with the hearing. The Board considered the timing of the request for a continuance, as well as the history of McGuire's retention and his medical care. The Board noted that McGuire accepted the case knowing of the previously scheduled hearing dates.

¶ 23 The Board denied a continuance because it considered the conflicts to be more self-inflicted than unavoidable. Its denial of a continuance was not arbitrary or without conscientious judgment but rather was based on a consideration of the circumstances, which was a proper exercise of the Board's discretion. Similarly, the dismissal of Robelet's application was not an abuse of discretion, as McGuire did not appear for the hearing and instructed Robelet not to appear.

¶ 24 Robelet timely appealed. On appeal, he argues that the Board erred in denying his motion for a continuance, in denying his motion to reconsider, and in dismissing his disability-pension application, such that he was denied a fair hearing and/or due process of law.

¶ 25                                   II. ANALYSIS

¶ 26 We begin by setting forth the applicable standard of review. In an appeal to the appellate court following the decision by a circuit court on administrative review, we review the decision of the administrative agency rather than the circuit court's judgment. *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386 (2010). An administrative agency has broad discretion in deciding whether to allow a continuance. *Wilson v. Department of Professional Regulation*, 344 Ill. App. 3d 897, 911 (2003). Still, the discretion must be exercised judiciously, rather than arbitrarily, to satisfy the ends of justice. *Id.* We review under the abuse-of-discretion standard an agency's decision to deny a motion to continue. *Shachter v. City of Chicago*, 2016 IL App (1st) 150442, ¶ 31.

¶ 27    Robelet first argues that, in denying his request for a continuance, the Board was improperly influenced by the investigative file of the Crystal Lake police department pertaining to the incident that caused Robelet to file his disability-pension application. Robelet argues that the Board wrongly distributed the file to its members before the report was admitted into evidence, essentially conducting an improper investigation outside of the hearing. Robelet cites *Polk v. Board of Trustees of the Police Pension Fund*, 253 Ill. App. 3d 525, 541 (1993), where the appellate court stated that two board members had wrongly conducted *ex parte* investigations in which they had acted as independent investigators.

¶ 28    Robelet's argument is without merit. According to Reimer, the Board's exhibits came from the documents the City provided pursuant to the Board's subpoena and the documents the City produced after it was allowed to intervene. Thus, this case is readily distinguishable from *Polk*, as here there is no evidence that any board member conducted an independent investigation. Further, on June 1, 2016, Reimer sent copies of these exhibits to Garza, stating that they were subject to any objection that he may have. However, Garza did not object to the exhibits. Robelet also does not cite any authority for the proposition that the Board was not allowed to possess relevant documents before the hearing. Rather, evidentiary rules are relaxed in administrative hearings. *Zollar v. City of Chicago Department of Administrative Hearings*, 2015 IL App (1st) 143426, ¶ 6; see also *Kimble v. Illinois State Board of Education*, 2014 IL App (1st) 123436, ¶ 79 ("the strict rules of evidence that apply in a judicial proceeding are not applicable to proceedings before an administrative agency").

¶ 29    We additionally note that administrative officials are presumed to be objective and able to fairly judge a controversy, and a party challenging a tribunal's impartiality must overcome the presumption that the members are fair and honest. *Turcol v. Pension Board of Trustees of Matteson Police Pension Fund*, 359 Ill. App. 3d 795, 804 (2005). To show bias, the party must prove that the members had to some extent adjudged the facts and law of the case before hearing it. *Id.* There is no evidence in this case that the Board's denial of Robelet's motion to continue was based on any reports. To the contrary, at the August 15, 2016, hearing, the Board discussed the continuance with McGuire for about three hours before it denied the motion. Even then, the Board stated that it would continue the hearing to August 17, 2016, the previously scheduled date, to begin hearing the merits of the case. When neither McGuire nor Robelet showed up at the August 17, 2016, hearing, the Board again discussed whether to allow a continuance before ultimately deciding to grant the City's motion to dismiss the case. In sum, nothing in the record supports Robelet's assertion that the Board's denial was based on an improper review of a City investigative file. Instead, the record indicates that the denial was based on the history of the case's scheduling and the circumstances surrounding the request itself.

¶ 30    Robelet next argues that, under the facts of the case, the Board should have granted his motion to continue the hearing. Robelet argues that McGuire requested the continuance shortly after his retention, it was McGuire's first request to continue the hearing, and the request was based on McGuire's medical condition. Robelet maintains that the August 16, 2016, motion to reconsider the denial of the continuance was based on McGuire having forgotten that he had doctor appointments scheduled for the following day and Reimer having just sent him about 1000 pages of additional discovery. Robelet argues that there would have been no harm to the Board in granting him a continuance, in contrast to the harm inflicted upon him by the dismissal of his disability-pension application. Robelet argues that, even though he contributed

to the pension fund throughout his more than 10 years of employment, he now cannot receive any disability benefits from it. Robelet contends that this distinction shows that the Board abused its discretion.

¶ 31    We conclude that the Board acted within its discretion in its rulings. We first look at its decision to deny Robelet's motion to continue. McGuire had begun considering representing Robelet by at least early July 2016, as shown by McGuire's July 9, 2016, letter stating that Robelet had retained him for the grievance arbitration. On July 25, 2016, the Board noticed the hearing dates of August 15 and 17, 2016. A little more than one week later, on August 3, 2016, McGuire formally agreed to represent Robelet, admittedly knowing of the scheduled hearing dates. The following day, McGuire sent a letter to Reimer, requesting a continuance based on his ongoing health issues. Reimer responded the next day, on August 5, 2016, by stating that the Board would consider the request for a continuance at the beginning of the hearing but that, if the request were denied, Robelet would be expected to put on his case-in-chief on that day.

¶ 32    Five days before the hearing, the City sent McGuire copies of all of the documents that it had produced and that it had previously sent to Garza. By the August 15, 2016, hearing, McGuire also had the USB drive that the Board had given Garza, which contained all of the documents on which it intended to rely. However, it is apparent from the hearing transcript that McGuire had not reviewed the documents, as he was not aware of what had been sent to him, much less prepared to put on Robelet's case-in-chief. The lack of preparedness shows a lack of due diligence. *In re Hannah E.*, 376 Ill. App. 3d 648, 655 (2007) ("A key factor when examining the propriety of [a decision whether to grant a continuance] is whether the party requesting the continuance has shown a lack of due diligence in proceeding with the cause."); *Dempsey v. Sternik*, 147 Ill. App. 3d 571, 580 (1986) (attorney's "total unpreparedness" indicated a lack of due diligence, which was not a good reason for granting a continuance). Instead, McGuire expected that the Board would grant the motion to continue based on his medical problems. Even then, he told Robelet not to attend the hearing, as a "calculated risk," to make it more difficult for the Board to decide to proceed that day. McGuire admittedly agreed to represent Robelet knowing of his own medical issues and of the hearing dates, a decision that he attributed to his "ego" and his belief that he would be able to present the case one month after the hearing date. Quite simply, if McGuire could not adequately represent Robelet on the scheduled hearing dates, he should not have taken the case, especially considering that he advised Robelet to stay with Garza. For these same reasons, Robelet should not have retained McGuire. Similarly, neither Robelet nor McGuire should have felt entitled to a continuance. See *Martinez v. Scandroli*, 130 Ill. App. 3d 712, 715 (1985) ("Where no reason exists for substitution of counsel, a party should only be allowed sufficient time for his counsel to prepare, not for each subsequent counsel he may seek to prepare independently.").

¶ 33    We further note that, even with his illness, McGuire was able to vigorously argue the motion to continue for about three hours. Thus, this situation is readily distinguishable from situations in which an unexpected and grave illness prevents an attorney from attending a hearing. *Cf. Ullmen v. Department of Registration & Education*, 67 Ill. App. 3d 519, 520, 522-23 (1978) (administrative body abused its discretion in denying a continuance where the attorney's wife had suddenly and seriously become ill); see also *Martinez*, 130 Ill. App. 3d at 714-15 ("Once a cause is reached for hearing, *** the movant is then required to present especially grave reasons to support his request" for a continuance.). Moreover, the Board did

not demand that Robelet begin presenting his case immediately but rather gave him until the second scheduled hearing date of August 17, 2016, at 2 p.m.

¶ 34 We likewise conclude that the Board did not abuse its discretion in denying Robelet's August 16, 2016, motion to reconsider the denial of his motion to continue. At the August 15, 2016, hearing, McGuire did not state that he had any conflict with the August 17, 2016, hearing date. Also, during the afternoon of August 16, 2016, Reimer's office manager arranged the delivery of documents with McGuire, and McGuire did not say that he would be absent from the next day's hearing. Nevertheless, on the evening of August 16, 2016, he sent the Board a letter stating that, after the previous day's hearing, his wife reminded him that he had two doctor appointments scheduled for August 17, 2016. One was scheduled for 11:15 a.m. and the second was originally scheduled for noon, but McGuire moved the second appointment to 2 or 2:30 p.m. Therefore, McGuire stated that he could not attend the August 17, 2016, hearing and asked that the Board reconsider the denial of his motion to continue.

¶ 35 However, the facts that the appointments were previously scheduled, that McGuire did not remember them even two days before he was to attend them, and that McGuire was able to reschedule one of them on short notice seemingly indicate that the appointments were not of an emergency nature. If they were, McGuire did not adequately explain so. It is especially troubling that McGuire rescheduled one of the appointments for a time that directly conflicted with the time of the hearing. McGuire further did not explain why he was sending the letter on the evening of August 16 if he had been reminded of the appointments the previous night. McGuire attached to his letter a notarized statement listing his doctors and medications, but it was not in the proper form to constitute an affidavit. Even so, what is disputed is not whether McGuire had medical issues, but rather whether the Board acted within its discretion in denying the continuance. McGuire also referenced in the letter that Reimer had sent him over 1000 pages of documents on August 16, 2016, but according to the record, those documents were duplicative of what the Board had previously disclosed. At the August 17, 2016, hearing, neither McGuire nor Robelet was present. Under these circumstances, the Board acted within its discretion in denying the motion to reconsider. Correspondingly, with Robelet attending neither of the scheduled hearing dates, the Board did not err in dismissing Robelet's application for a disability pension.

¶ 36 Finally, we note that, in an administrative proceeding, due process requires notice and a meaningful opportunity to be heard. *Adams County Property Owners & Tenant Farmers v. Illinois Commerce Comm'n*, 2015 IL App (4th) 130907, ¶ 45. There is no dispute that Robelet was timely notified of the hearing dates. The Board was ready to hear Robelet's case on those dates, but he chose not to be present. We find no due process violation, as Robelet's refusal to participate in the proceedings does not amount to a lack of opportunity to be heard.

¶ 37                                                    III. CONCLUSION
¶ 38 For the reasons stated, we affirm the judgment of the McHenry County circuit court, which affirmed the Board's decisions to deny Robelet's motion to continue, to deny his motion to reconsider, and to dismiss his application for a disability pension.

¶ 39 Affirmed.