2020 IL App (1st) 190247-U

THIRD DIVISION
May 20, 2020

No. 1-19-0247

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| PETER J. WAGNER, | ) | Petition for Direct Administrative |
| | ) | Review of a Decision of the |
| Petitioner-Appellant, | ) | Illinois Human Rights |
| | ) | Commission. |
| v. | ) | |
| | ) | Charge No. 2012SR3637 |
| ILLINOIS HUMAN RIGHTS COMMISSION, ILLINOIS | ) | ALS No. 13-0388 |
| DEPARTMENT OF HUMAN RIGHTS, and STATE OF | ) | |
| ILLINOIS DEPARTMENT OF COMMERCE AND | ) | |
| ECONOMIC OPPORTUNITY, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    Held:   The Department of Human Rights's conclusion that there was no evidence to support disability discrimination claim was not an abuse of discretion where the record showed that probationary employee had "unacceptable" job performance, and the employer was not aware of the employee's disabilities when it began disciplining him for his poor performance.

¶ 2    Petitioner, Peter J. Wagner, appeals *pro se* from a final order entered by the Human Rights Commission (Commission) sustaining the Department of Human Rights's (Department) dismissal of his charge of employment discrimination against his former employer, the Illinois Department

of Commerce and Economic Opportunity (DCEO). The Commission concluded that the Department properly dismissed petitioner's employment discrimination charge for lack of substantial evidence. On appeal, petitioner asks this court to reverse the Commission's order, and remand the matter for further proceedings.

¶ 3    The record shows that in October 2011, petitioner filed a charge of discrimination with the United States Department of Justice, alleging that DCEO had discharged him because of his disabilities, specifically, depression and anxiety. The charge was transferred to the Equal Employment Opportunity Commission ("EEOC") and the Department. The Department initially dismissed Wagner's charge for a lack of jurisdiction under the Illinois Human Rights Act ("Act"), 775 ILCS 5/1-101, *et seq.*, finding that it was untimely. However, on review at the Commission, the Department acknowledged that it had previously made an error regarding petitioner's discharge date, and determined that did, in fact, have jurisdiction to investigate petitioner's claim. Accordingly, on February 25, 2013, the Commission vacated the dismissal, reinstated the charge, and remanded to the Department for "further investigation and other proceedings consistent with this Order and the Act."

¶ 4    On remand, the Department investigated petitioner's allegation that he was discharged by DCEO because of his disabilities of depression and anxiety, and issued an investigation report, dated May 9, 2013. The Department's investigation report noted certain uncontested facts. Specifically, petitioner had been hired by DCEO as a probationary employee on June 1, 2010. Approximately three months later, on August 31, 2010, petitioner received a performance evaluation from his supervisor, Jill Mehrberg, who rated petitioner's job performance in the areas of "Planning, Initiative, Quality, Productivity, Knowledge, Judgment, Teamwork, Leadership, and Human Relations." Mehrberg rated petitioner's performance in each of the nine categories as

2

"unacceptable," and also rated his "overall performance rating" as "unacceptable." Thereafter, on September 24, 2010, petitioner went on a leave of absence and filed for Worker's Compensation, submitting a physician's statement which indicated that he had been diagnosed with "Depression [and] General Anxiety Disorder." Petitioner's expected return to work date was December 21, 2010, but his leave of absence was later extended until September 18, 2011. While still on leave, petitioner was sent a notice for a disciplinary meeting with intent to discharge on June 10, 2011, and was ultimately discharged on June 29, 2011.

¶ 5     The Department investigator then articulated "[Petitioner]'s Evidence," including information regarding petitioner's diagnoses, and his claim that the disabilities were "increased and worsened" by having to work with Mehrberg, because she "harassed and needlessly criticized him and his work." Petitioner also claimed that his negative job performance evaluation "made his disabilities worse." The Department investigator noted that petitioner submitted two witness statements regarding his "ill treatment at work." Specifically, Tina Dye, Human Resources Specialist, stated that she had "not seen, in person, harassment" but that she was "included on emails" between petitioner and his supervisor that were "ridiculous." Dye thought petitioner's supervisor was "set[ting] him up to fail" and had "not given him due credit." In the other witness statement, Mica Torricelli, Public Service Administrator, stated that she had observed Mehrberg "challenging [petitioner's] decisions, micromanaging on unimportant matters, and inundating [petitioner] with tedious tasks." Torricelli further stated that she also experienced Mehrberg's actions "first hand," and had resigned from a position "due to the harassing emails and hostile work environment created by" Mehrberg.

¶ 6     The Department investigator next articulated the "[DCEO]'s Evidence." In particular, Dye averred that DCEO does not discriminate against its employees, and that DCEO was initially

unaware that petitioner had a disability because he had filled out and signed a disability form indicating that he did not have a disability. Petitioner was hired as a probationary employee and "had poor job performance, and continuously failed to follow [DCEO]'s policies." DCEO's practice is to discipline or discharge probationary employees who have "subpar job performance." Because of petitioner's poor job performance, Mehrberg sent petitioner an email on September 23, 2010, to set up a disciplinary meeting for September 27, 2010. However, later that day, petitioner sent Mehrberg a "Worker's Compensation Employee's Notice of Injury," and left suddenly on a leave of absence.

¶ 7    Because petitioner was in his probationary period and was not meeting the job requirements of his position, DCEO sent petitioner a notice for a disciplinary meeting with intent to discharge on June 10, 2011, and petitioner was ultimately discharged on June 29, 2011. DCEO maintained that the discharge was based on petitioner's poor job performance, and not on any disability.

¶ 8    After outlining the above evidence, the Department investigator concluded that the investigation "revealed that there is no substantial evidence that [petitioner] was discharged due to his disabilities/anxiety and workplace depression." The investigator found that petitioner's medical conditions were "significantly debilitating and not insubstantial" disabilities, and agreed that petitioner was "considered disabled." The investigator noted, however, that petitioner was first diagnosed after his poor job performance evaluation. The investigator concluded that the evidence showed that DCEO had a "legitimate, non-discriminatory reason to discharge" petitioner, specifically, his "poor job performance evaluation done prior to his disability diagnosis."

¶ 9    In August 2013, petitioner filed a request for review of the Department's decision with the Commission, citing two issues—first, petitioner disputed the factual accuracy of the Department's "[i]nvestigative findings" and second, he contended that the Department did not conduct "a proper

and thorough investigation." In particular, petitioner contended that the Department "excluded" him from the "investigative process" and allowed DCEO to "misinform the Department as to the factual issues of the case." Petitioner maintained that the "one-sided approach" evinced the Department's "clear bias" in favor of DCEO, its "sister agency." Petitioner also disputed certain factual evidence, including that the purpose of the September 27, 2010, meeting was disciplinary—instead claiming that the purpose was "to review work plan tasks and gain his advice." Additionally, petitioner questioned the accuracy of his August 2010 probationary performance evaluation, and asserted that the Department ignored his proposed corrections to the evaluation and his history of excellent performance in his previous jobs. Petitioner attached eight exhibits to his request for review before the Commission, which included various email correspondence that he claimed supported the discrimination charge.

¶ 10    In October 2013, the Department responded to petitioner's request for review, maintaining that there was no substantial evidence supporting his allegations that he was discharged because of his disabilities. The Department claimed that its investigation was thorough and unbiased, and argued that the evidence did not support a *prima facie* case of unlawful discrimination because there was not substantial evidence that petitioner was discharged because of his disabilities. The Department alleged that, contrary to petitioner's allegations, the evidence supported DCEO's claim that it discharged him for a nondiscriminatory reason—his poor work performance.

¶ 11    In petitioner's reply, he argued that the August 2010 job evaluation was "outside the scope of the Charge before the Department." He explained that he was not alleging that the evaluation was motivated by disability-based animus, and instead was claiming that DCEO improperly discharged him while he was on a medical leave. Petitioner also argued that the Department's inadequate investigation violated his due process rights.

¶ 12    After reviewing the pleadings, the Commission entered a final order sustaining the Department's dismissal of petitioner's charge for lack of substantial evidence supporting his charge of disability discrimination, finding that petitioner's claim failed "because he could not establish that his work performance was satisfactory and that a similarly situated nondisabled employee was treated more favorably than him in similar circumstances." The Commission noted that the evidence showed that DCEO was not even aware of petitioner's disabilities until after his work was evaluated as "unacceptable." The Commission concluded that there was no evidence that DCEO was "motivated by anything other than its determination of the Petitioner's inability to meet its legitimate expectations." The final administrative decision was served on petitioner by mail on January 11, 2019. Petitioner filed a petition for direct administrative review of the Commission's decision with this court on February 11, 2019.

¶ 13    We initially note we have jurisdiction to review the final order of the Commission since petitioner filed a timely petition for review pursuant to Illinois Supreme Court Rule 335 (eff. July 1, 2017). See *Kreutzer v. Illinois Commerce Commission*, 404 Ill. App. 3d 791, 796 (2010).

¶ 14    In this court, petitioner raises several issues to challenge the Commission's final order. Petitioner's claims can be generally grouped into challenges to the process used by the Department, and challenges to the factual findings and conclusions of the Department and the Commission.

¶ 15    Petitioner first claims that the Department's process was inadequate, biased, and violated his due process rights. He asserts that he was improperly excluded from the Department's "investigation fact-finding conference, and hearing," and that, had he been included, he "could have provided additional evidence that could counter some of the DCEO's allegations." Petitioner specifically complains that he was not allowed to respond to DCEO's evidence, pointing to the investigation report section titled "[Petitioner]'s Rebuttal," under which the Department

investigator wrote: "None." Whether a complainant's procedural due process rights were violated is a question of law that we review *de novo*. *Lyon v. Department of Children and Family Services*, 209 Ill. 2d 264, 271 (2004).

¶ 16    In *Jabbari v. Ill. Human Rights Comm'n*, 173 Ill. App. 3d 227, 232 (1988), this court concluded that a complainant possesses a property right in the right to file a claim under the Act. However, until a complaint is issued by the Department, the proceedings are investigatory and not adjudicatory. *Id*. "When the Department dismisses a charge for lack of substantial evidence ***, the dismissal occurs during the investigatory or fact-finding stage." *Id*., at 233. During the fact-finding stage, the Department "*may*," but is not required to, convene a fact-finding conference "for the purpose of obtaining evidence, identifying the issues in dispute, ascertaining the positions of the parties and exploring the possibility of a negotiated settlement." (Emphasis added). 56 Ill. Adm. Code 2520.440(a) (2016).

¶ 17    This court in *Jabbari* relied on the United States Supreme Court in *Hannah v. Larche*, 363 U.S. 420 (1960), to conclude that "the rights of discovery, confrontation, cross-examination and other elements of due process attending judicial and quasi-judicial proceedings do not apply in investigative proceedings." *Jabbari*, 173 Ill. App. 3d at 233. A complainant, therefore, has " 'no constitutional right of participation in the investigation of her charge. Such participation would entitle every complainant to a hearing regardless of the validity of the allegations of one's charge. * * * It would be impossible to conduct an efficient investigation. Such participation is neither required by the Constitution nor by the legislature.' " (omission in original). *Id*., quoting *Klein v. Fair Employment Practices Commission*, 31 Ill. App. 3d 473, 483 (1975); see also *Gayle v. Human Rights Commission*, 218 Ill. App. 3d 109, 113 (1991) (where a charge is dismissed by the Department for lack of substantial evidence and no complaint was ever filed with the Commission,

the "full panoply of due process rights need not have been afforded" to the complainant." (internal quotation marks and citation omitted)).

¶ 18    Because petitioner had no constitutional right of participation at the investigatory stage, his claims that his due process rights were violated by the Department's failure to include him in the investigation must necessarily fail. *Jabbari*, 173 Ill. App. 3d at 233.

¶ 19    Moreover, our review of the record contradicts petitioner's factual contention that he was excluded from the Department's investigation. Instead, the record shows that petitioner had multiple opportunities to present evidence to support his claim, and in fact, presented evidence to the Department. The investigator extensively articulated petitioner's evidence in the investigation report in 11 paragraphs under the heading "Complainant's Evidence," which included information about petitioner's diagnoses, his complaints against Mehrberg, and witness reports attesting to Mehrberg's behavior toward petitioner. Although petitioner complains that the Department's investigation report did not include anything in the section entitled "Rebuttal," the Act does not give complainants a right to present rebuttal evidence. *See* 775 ILCS 5/7A-102(C) (West 2016). Petitioner does not articulate any evidence that he could have provided that was not already before the Department, or that he was not able to submit to the Commission on review.

¶ 20    If a complainant believes that the Department's investigation was inadequate, he has an additional opportunity to submit additional evidence to the Commission. 775 ILCS 5/8-103(B) (West 2016) (providing that "the Commission may consider the Department's Report, [and] any argument and supplemental evidence timely submitted"); *see Gayle*, 218 Ill. App. 3d at 113-14 (any constitutional "deprivation" by the Department's reliance only on communications with employer would be "of little consequence" where the complainant had the opportunity to present evidence to the Commission on review).

8

¶ 21    Here, petitioner had the opportunity to present evidence before the Commission with his request for review, and he actually took advantage of this opportunity by attaching eight exhibits to that request. There is also no dispute that the Department submitted the required investigation report, that petitioner received review at the Commission, or that petitioner was able to seek judicial review of the Commission's decision in this court. Accordingly, we find no deficiencies in the process afforded to petitioner, and conclude that petitioner had a sufficient opportunity to present his evidence to the Department and the Commission during the investigation and review of his claim.

¶ 22    We also reject petitioner's contention that the Department was biased against him. When reviewing claims that an agency was biased, we start with the presumption that administrative officials are "objective and able to fairly judge a controversy." *Robelet v. Police Pension Fund of Crystal Lake*, 2017 IL App (2d) 170306, ¶ 29. A person challenging an agency's impartiality bears the burden of overcoming this presumption. *Id.* "Bias by an administrative agency may be shown only if a disinterested observer would conclude that the agency, or its members, had adjudged the facts and law of the case before the matter was heard." *Kimball Dawson, LLC v. City of Chicago Department of Zoning*, 369 Ill. App. 3d 780, 792 (2006). A "mere possibility of prejudice is insufficient to show that an administrative decision maker was biased." (Internal quotations and citations omitted). *SMRJ, Inc. v. Russell*, 378 Ill. App. 3d 563, 571 (2007). To "prove bias, the plaintiff must overcome a presumption of honesty by showing in the record that the administrative proceedings were either tainted by dishonesty or contained an unacceptable risk of bias." (Internal quotations and citations omitted). *Id*.

¶ 23    Here, the record does not support petitioner's claims that the Department was biased against him and in favor of DCEO. As stated above, the proceedings before the Department in this

matter occurred at the investigatory stage, at which petitioner has no constitutional right of participation. See *Jabbari*, 173 Ill. App. 3d at 233. Nonetheless, the record shows that the investigation report articulated the evidence from both parties, before concluding that, although petitioner's medical conditions were "significantly debilitating and not insubstantial" disabilities, there was not substantial evidence of discrimination. Petitioner's claim of bias, premised on the fact that the Department rejected his claim against a "sister agency," is merely speculative, and is not sufficient to overcome the presumption that the Department was "objective and able to fairly judge a controversy." *Robelet*, 2017 IL App (2d) 170306, ¶ 29.

¶ 24 Petitioner next contends that the Department and Commission "drew incorrect conclusions" and that the Commission's decision was erroneous because it relied on the Department's dismissal.

¶ 25 Under the Act, the Department must determine whether there is substantial evidence that a civil rights violation has occurred, and dismiss the charge if there is not. 775 ILCS 5/7A-102(D)-(3) (West 2016). Substantial evidence is evidence which a reasonable mind would find sufficient to support a particular conclusion, and consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. 775 ILCS 5/7A-102(D)(2) (West 2016). However, mere speculation and conjecture do not constitute substantial evidence of discrimination. *Willis v. Illinois Department of Human Rights*, 307 Ill. App. 3d 317, 326 (1999).

¶ 26 If the Department determines that there is substantial evidence to support the charge, then it will notify the complainant that he has the right to file a civil action in the circuit court or to request that the Department file a complaint with the Commission. 775 ILCS 5/7A-102(D)(4) (West 2016). If, however, the Department determines that there is not substantial evidence to support the charge, then it must dismiss it. 775 ILCS 5/7A-102(D)(3) (West 2016).

¶ 27    If the charge is dismissed, the complainant may request that the Commission review whether the Department properly dismissed the charge for lack of substantial evidence. 775 ILCS 5/7A-102(D)(3) (West 2016); 775 ILCS 5/8-103(B) (West 2016). If the Commission sustains the Department's dismissal of the charge, then the complainant may seek judicial review from the appellate court. 775 ILCS 5/8-111(B)(1) (West 2016).

¶ 28    We review the final order of the Commission and not the decision of the Department. See *Deen v. Lustig*, 337 Ill. App. 3d 294, 302 (2003). The supreme court has cautioned that "a reviewing court may not reweigh the evidence or substitute its judgment for that of the trier of fact. Findings of fact are entitled to deference, and this is particularly true of credibility determinations." *Zaderaka v. Illinois Human Rights Commission*, 131 Ill. 2d 172, 180 (1989); see also *Willis*, 307 Ill. App. 3d at 327. A reviewing court will not overturn the Commission's decision to sustain the dismissal of a charge of employment discrimination unless the decision was arbitrary and capricious or an abuse of discretion. *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 917 (2010). An abuse of discretion exists where the Commission's decision is clearly against logic or was reached without employing conscientious judgment. *Deen*, 337 Ill. App. 3d at 302. A decision is arbitrary and capricious only if it "contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an impossible explanation contrary to agency expertise." (Internal quotation and citation omitted). *Owens*, 403 Ill. App. 3d 899, 917 (2010).

¶ 29    Courts should examine evidence "as a whole" to determine whether the complainant was discharged because of a protected characteristic. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); see also *Lau v. Abbott Labs.*, 2019 IL App (2d) 180456, ¶ 39. "[T]he singular question that matters in a discrimination case [is]: '[W]hether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other

proscribed factor caused the discharge or other adverse employment action.' " *Johnson v. Advocate Health and Hospitals Corp.*, 892 F.3d 887, 894 (7th Cir. 2018) (quoting *Ortiz*, 834 F.3d at 765).

¶ 30    To present this evidence, a plaintiff may utilize the framework set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), and adopted by the Illinois supreme court in *Zaderaka*, 131 Ill. 2d at 178–79. Under that approach, petitioner must first establish a *prima facia* case of unlawful discrimination by a preponderance of the evidence. *Id.* at 179–80. To establish a *prima facie* case of disability discrimination, petitioner must show: (1) he was disabled within the definition of the Act; (2) his disability is unrelated to his ability to perform the functions of the job he was hired to perform; and (3) an adverse job action was taken against him related to his disability. *Kreczko v. Triangle Package Mach. Co.*, 2016 IL App (1st) 151762, ¶ 37.

¶ 31    If a *prima facie* case is established, a rebuttable presumption arises that the employer unlawfully discriminated against the plaintiff. *Zaderaka,* 131 Ill. 2d at 180. To rebut the presumption, the employer must articulate, not prove, a legitimate, nondiscriminatory reason for its decision. *Id*. Third, if the employer articulates such a reason, the plaintiff must prove, again by a preponderance of the evidence, that the employer's reason was untrue and was pretext for discrimination. *Id*. Under this test, the ultimate burden of persuasion remains on the plaintiff throughout the proceedings. *Id*.

¶ 32    The *McDonnell Douglas* framework "is a means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns found in discrimination cases" however, it is not the only way to assess evidence of discrimination. *David v. Board of Trustees of Community College District No. 508*, 846 F.3d 216, 224 (7th Cir. 2017); see also *Johnson,* 892 F.3d at 894 (the *McDonnell Douglas* framework is "merely one way of culling the relevant

evidence needed to demonstrate whether a reasonable factfinder could conclude that an employer engaged in an adverse employment action" based on the plaintiff's disability or another proscribed factor). We therefore also assess the evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself" in determining whether the complainant has produced sufficient evidence to his charge of discrimination. *Ortiz*, 834 F.3d at 765; see also *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (2013) ("The central question at issue is whether the employer acted on account of the plaintiff's race (or sex, disability, age, etc.)").

¶ 33    In this case, the Commission used the *McDonnell Douglas* approach when determining that petitioner's charge of discrimination was unsupported by substantial evidence. Both petitioner and DCEO also frame their arguments on appeal under the *McDonnell Douglas* approach. We therefore begin our analysis by examining petitioner's claim under that framework.

¶ 34    In this case, the Department concluded that petitioner failed at the first step—he failed to establish a *prima facie* case of discrimination, because he failed to show that he was discharged due to his disability, rather than his failure to meet DCEO's legitimate business expectations.

¶ 35    The record shows that petitioner's job performance evaluation indicated that his performance was "unacceptable" in all nine categories reviewed, that his overall performance was also "unacceptable," and that the evaluation was conducted prior to petitioner being diagnosed with any disability. Additionally, neither DCEO's proposal for discharge nor the letter discharging him referred to his disability. Instead, the proposal for discharge referenced petitioner's evaluation, which rated his performance as "unacceptable" because he did not meet "established objectives and standards of the job in a significant number of situations," and explained that petitioner was being considered for discharge "for failure to perform duties satisfactorily" during his "probationary period." Moreover, Dye, DCEO's human resources specialist, confirmed that

petitioner "had poor job performance," and that he was discharged because of his performance, not because of any disability.

¶ 36    This evidence showed that DCEO was not aware of, and thus not motivated by, petitioner's disabilities when it began to discipline him. See *Acorn Corrugated Box Co. v. Illinois Human Rights Commission*, 181 Ill. App. 3d 122, 139 (1989) (evidence refuted employee's disability discrimination charge where he "did not reveal in his application for employment, at his physical examination, or at any time prior to [his discharge]" that he suffered from a medical condition); *Hedberg v. Indiana Bell Telephone Co.*, 47 F.3d 928, 932 (7th Cir. 1995) ("it is intuitively clear *** that an employer cannot fire an employee because of' a disability unless it knows of the disability." (Internal quotations omitted)).

¶ 37    Although DCEO was aware of petitioner's disabilities at the time of his eventual discharge, an employer is not prohibited from discharging a disabled employee who does not perform satisfactorily. *Timmons v. General Motors Corp.*, 469 F.3d 1122, 1128 (7th Cir. 2006) (finding there was no evidence suggesting that employer took adverse action because of employee's "disability rather than his inability to perform critical aspects of the job"). The fact that an employee is on approved medical leave also does not prevent an employer from discharging him for poor work performance. See *Clay v. City of Chicago Department of Health*, 143 F.3d 1092, 1094-95 (7th Cir. 1998) (the evidence showed that complainant was "discharged for poor performance rather than for taking a medical leave," where there was "uncontradicted evidence *** that her performance was extremely flawed," and the complainant's "work deficiencies [were] known to defendants prior to her leave."). Based on our review of the record, we cannot say that the Department's conclusion that there was no substantial evidence that petitioner's discharge was related to his disability was arbitrary, capricious or an abuse of discretion.

¶ 38    Accordingly, we find that petitioner failed to establish a *prima facie* case of employment discrimination, and, evaluating the evidence as a whole, we also conclude that petitioner failed to provide the Department with substantial evidence to support his charge. We therefore find no abuse of discretion, arbitrariness or capriciousness by the Commission in sustaining the Department's dismissal of petitioner's claim of employment discrimination.

¶ 39    For the forgoing reasons, we affirm the Commission.[1]

¶ 40    Affirmed.

---

[1] We note that oral argument was not requested in this case.