2023 IL App (1st) 200578-U

SECOND DIVISION
June 30, 2023

No. 1-20-0578

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| JASON POWELL, | ) | |
| | ) | |
| Plaintiff-Appellant | ) | Appeal from the |
| | ) | Circuit Court of |
| v. | ) | Cook County |
| | ) | |
| ILLINOIS DEPARTMENT OF FINANCIAL AND | ) | 17 CH 11405 |
| PROFESSIONAL REGULATION, BRYAN | ) | |
| SCHNEIDER, Secretary, KREG ALLISON, Director of | ) | Honorable |
| the Division of Real Estate, and THE REAL ESTATE | ) | Caroline Kate Moreland, |
| ADMINISTRATION AND DISCIPLINARY BOARD, | ) | Judge Presiding |
| | ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirmed. ALJ did not violate plaintiff's due process rights by refusing to continue administrative hearing. Nor did ALJ commit reversible evidentiary error.

¶ 2    Plaintiff Jason Powell appeals the decision of the Real Estate Administration and Disciplinary Board (Board) to revoke his real estate appraisers license and impose a significant penalty against him. Before this court, he argues the Illinois Department of Financial and Professional Regulation's administrative law judge (ALJ) erred in refusing to move the hearing, and that the ALJ made prejudicial evidentiary errors. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4      In 2010, the Department brought an administrative action to revoke Powell's real estate appraiser's license based on allegations that he assisted a mortgage fraud scheme through bogus appraisals. (Several members of that scheme pleaded guilty to federal mortgage fraud charges related to the properties that Powell appraised.)

¶ 5      Powell failed to respond to the Department's initial complaint, and the ALJ ultimately entered a default judgment in early 2012. Based on the default, the Board revoked Powell's license and issued a fine. On initial administrative review, the circuit court vacated the default and remanded the case for further administrative proceedings. Powell answered the complaint in early 2016. In the answer, Powell admitted that he had performed the appraisals in question but denied that he had engaged in any of the alleged misconduct.

¶ 6      In June 2016, the ALJ entered an order scheduling discovery and setting hearing for November 1 and 2. In mid-October, the Department moved to amend the complaint, correcting the citations to the provisions of the Real Estate Appraiser Licensing Act of 2002, 225 ILCS 458/1 *et seq*. (the Act) that it claimed Powell violated. Around the same time, after the close of discovery, the Department also supplemented its production with the deeds and mortgages of the subject properties (third supplemental production) and disciplinary orders for other individuals involved in one of the subject properties (fourth supplemental production). In total, these last two supplemental productions consisted of 36 pages.

¶ 7      A week before the hearing, on October 25, 2016, Powell moved to continue the hearing. At the time, Powell was in his third year of medical school. He argued that he would not be able to attend the hearing because it conflicted with his mandatory Internal Medicine clerkship. Specifically: "As a 3rd year student[,] Respondent is not allowed to take week days off and he is

only given 3 weekend days off for the entire month. Respondent's shift is from 6:30 am until 5:00 pm and every 4th day Respondent must work from 6:30 am until 9:00 pm." Powell claimed "if given notice," he "may be able to request time off" in December.

¶ 8    In addition to his unavailability argument, Powell claimed, in a single sentence, that the Department's amendment correcting the complaint was substantive, and he should be given time to answer. Also, he argued the Department "has disclosed a massive production of documents it intends to use during the formal hearing"—more than 500 pages. Citing the amendment and the Department's productions—the third and fourth supplemental productions—Powell argued that "it would not be fair to proceed to a formal hearing on November 2, 2016."

¶ 9    The ALJ denied the motion. The ALJ did not find Powell's need for a last-minute continuance warranted because the hearing date had been set five months earlier in June. The ALJ further found that the additional 36 pages of discovery, disclosed two weeks before the hearing, were not so onerous to warrant a continuance. Separately, the ALJ allowed the Department to amend the charges to make technical corrections, which the ALJ found did not prejudice Powell.

¶ 10    Powell filed an emergency motion to reconsider. In support, he provided the contact information for his supervisor to confirm his schedule. In its response, the Department noted that Powell had been aware of the hearing date since June. The response further noted that, "[o]n October 31, 2016, the Department contacted Respondent's immediate supervisor Lesley Maatman at the number provided in Respondent's affidavit. Ms. Maatman informed the Department that Respondent has failed to make any attempt to ask for the hearing date off of work, yet has requested and [been] granted time off for other obligations as recently as October 31, 2016." The ALJ denied reconsideration. The case proceeded to hearing as scheduled.

¶ 11     Powell was not present at the hearing but was represented by counsel. During the hearing, only one witness testified: Brian Weaver, the Department's Appraisal Coordinator. Powell, through his attorney, presented no witnesses or any evidence on his behalf.

¶ 12     At the time of the hearing, Weaver had worked for the "State of Illinois as the appraisal coordinator and appraisal management company coordinator" for 10 years. He has been a licensed real estate appraiser since 1981. Throughout his career, he has performed "thousands" of appraisals and "hundreds" of appraisal reviews. In addition, he has been published numerous times and has lectured at appraisal conferences. He had been qualified as an expert in the field of appraisals approximately 30 times in court cases.

¶ 13     After establishing these credentials, the Department tendered Weaver as an expert witness. Powell's counsel objected: "There is nothing that qualifies him as an expert from what I've heard." The ALJ disagreed and qualified Weaver as an expert.

¶ 14     Weaver testified about the basic requirements of an appraisal. Within the field, he testified that the result is not the important part—the process is. To ensure reliability, appraisers are required to follow the Uniform Standards of Professional Appraisal Practice (Standards). Generally speaking, the three Standards relate to the "development of an appraisal assignment (standard 1), "the communication of what you have developed" (standard 2), and "the review process partaking in other appraiser's work" (standard 3).

¶ 15     Weaver concluded that Powell made several errors in his appraisal reports indicative of fraud that were too grave and obvious to constitute mere carelessness. Because Powell does not challenge the sufficiency of the proof or the sanction imposed, it is not necessary to fully detail all the evidence or Weaver's complete testimony.

¶ 16    But to use one portion as an example, Weaver testified to appraisals that Powell performed on seven different condominiums in a building on South Michigan Avenue. Each report indicated that the borrower for one of these seven units was either John Welch or Kristin Daugherty. Each unit was described by Powell as owner-occupied, even though each of them was owned by an LLC. Each unit was described as a primary residence, which could not be possible for seven different properties with only two potential buyers, Welch or Daugherty. All properties were described as being on the first floor, which was false.  Each unit had concurrent contract dates and identical purchase offers ($175,000), though the units differed based on the direction they faced or the floor on which they were located. The year of construction was listed as 1902, though it was built in the 1960s.

¶ 17    After Weaver's testimony, the Department sought to admit the exhibits used. Powell objected to several, arguing that the documents had not been properly authenticated. While the ALJ reserved ruling on some exhibits, he allowed the ones at issue here.

¶ 18    After exhaustingly reviewing the evidence before him, the ALJ recommended revoking Powell's license and imposing a civil penalty of $54,500.00. The Department adopted this recommendation and entered an order accordingly. Powell moved to reconsider the Department's order. In denying that motion, the Secretary of the Department addressed each of Powell's arguments separately and found no error in the ALJ's recommendation or the adoption of it.

¶ 19    Powell again appealed to the circuit court. This time, the court affirmed the Department's decision. Powell filed a motion to reconsider, which was also denied. This appeal followed.

¶ 20                                    ANALYSIS

¶ 21    Before this court, Powell argues only that the ALJ (1) violated his due process rights by refusing to continue the hearing and (2) made evidentiary errors during the revocation hearing.

Though Powell made other arguments below related to the sufficiency of the evidence and the harshness of his discipline, we limit our review to what he raises on appeal and nothing more. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (points not argued on appeal are forfeited).

¶ 22                                    I. Denial of Continuance

¶ 23     We begin with Powell's primary argument, that the ALJ violated his due process rights by refusing to move the November 1 hearing. He claims he was entitled to a continuance on either of two bases: his inability to attend the hearing and the Department's "late" supplemental disclosures and amendment to the complaint.

¶ 24     Powell says our review of this question is *de novo*, because he is claiming a due-process violation. He is correct that he has a property interest in his appraiser license; that administrative hearings must comply with due process; and that review of due-process violations are typically *de novo*. See *Engle v. Department of Financial and Professional Regulation*, 2018 IL App (1st) 162602, ¶¶ 40, 42.

¶ 25     But he is incorrect that the denial of a continuance, by itself, implicates due-process concerns. "A long line of cases has held that the denial of a motion for continuance presents no due-process issue." *In re S.B.,* 2015 IL App (4th) 150260, ¶ 21 (collecting cases involving property interests). As the court there noted, "the supreme court has held, without qualification: 'The sole question relating to the denial of [a] motion for a continuance is whether or not the trial court erred in its exercise of judicial discretion. Due process is in no [way] involved.' " *Id.* (quoting *Benton v. Marr,* 364 Ill. 628, 630 (1936)).

¶ 26     We thus review this question for an abuse of discretion. *Robelet v. Police Pension Fund of City of Crystal Lake*, 2017 IL App (2d) 170306, ¶ 32 (courts review denial of continuance for abuse of discretion); *Shachter v. City of Chicago*, 2016 IL App (1st) 150442, ¶ 31 (same).

Generally speaking, an administrative body has broad discretion in determining whether to continue a proceeding. *Wilson v. Department of Professional Regulation*, 344 Ill. App. 3d 897, 911 (2003). "Such discretion, however, 'must be exercised judiciously, and not arbitrarily' so as to satisfy the ends of justice." *Id.* (quoting *Bickham v. Selcke*, 216 Ill. App. 3d 453, 459 (1991)).

¶ 27    We find no abuse of discretion in the ALJ's denial of a continuance. The hearing date had been on the books for five months, yet Powell waited until the week before the hearing to seek a continuance. The ALJ noted that Powell had not explained when he became aware of a conflict, and Powell never answered that question—not even in his motion to reconsider the denial of the continuance. And there is evidence in the record, submitted by the Department, that Powell had not even attempted to get time off from his supervisor to attend the hearing, though he had sought time off for other reasons recently.

¶ 28    A key consideration in determining whether to grant a continuance is a party's diligence. *Robelet*, 2017 IL App (2d) 170306, ¶ 32; *In re Hannah E.*, 376 Ill. App. 3d 648 (2007); *Dempsey v. Sternik*, 147 Ill. App. 3d 571, 580 (1986). Here, Powell did not satisfactorily explain that he had an irreconcilable conflict (versus one around which he could reschedule), much less when he became aware of this supposed conflict.

¶ 29    Nor did Powell's other reasons pass muster. The amendment to the charges was technical in nature. And though he complained that he and his counsel were tasked with reviewing some 500 pages of discovery, the vast majority of that discovery had been disclosed far earlier. The more recent two supplemental productions that Powell identified consisted of a mere 36 pages, for which he had two weeks to prepare. See *Robelet*, 2017 IL App (2d) 170306, ¶ 32 (no good cause to continue where attorney failed to review documents that were turned over just five days before hearing). And as the Department notes, 20 of those pages were disciplinary documents

relating to other individuals involved in the fraudulent scheme, relevant to a possible disciplinary sanction—and Powell does not complain about the severity of his sanction on appeal.

¶ 30    Lastly, though Powell was not physically present, his attorney was. Compare *Six-Brothers King Drive Supermarket, Inc. v. Department of Revenue*, 192 Ill. App. 3d 976, 983 (1989) (justice required continuance where "the refusal to continue the hearing meant that the taxpayer could not be represented either by its corporate officer or by an attorney of its choice."). We would note, as well, that counsel never made an offer of proof as to how Powell might have been prejudiced—for example, what testimony, if any, Powell would have offered if present.

¶ 31    For all these reasons, we find no abuse of discretion in the denial of the continuance. Nor, for that matter, would we find error even if, as Powell urges, we considered this issue *de novo*.

¶ 32                                 II. Evidentiary Errors

¶ 33    Powell's claims of evidentiary error are that the ALJ erred in qualifying Weaver as an expert and in admitting "unauthenticated" exhibits into evidence. We review an administrative agency's evidentiary rulings for an abuse of discretion. *Matos v. Cook County Sheriff's Merit Board*, 401 Ill. App. 3d 536, 541 (2010). Powell must demonstrate "demonstrable prejudice." *Id*.

¶ 34    Powell lists numerous "deficiencies" in Weaver's qualifications. But his complaints are directed, if anywhere, at flaws in Weaver's testimony, not in his qualifications. For example, Powell notes that "[d]uring his testimony Mr. Weaver was reading from documents that were not introduced into evidence." Putting aside that Weaver was refreshing his recollection, which did not require the admission of the documents, that complaint does not mean Weaver was unqualified to give an expert opinion.

¶ 35    There is no question that Weaver was so qualified. He has three decades of experience as an appraiser, has performed thousands of appraisals and hundreds of appraisal reviews, has

lectured to appraisers around the state and published on the topic, and has been qualified as an expert in court approximately 30 times. A witness can be qualified as an expert based on their "knowledge, skill, experience, training, or education." *Biundo v. Bolton*, 2020 IL App (1st) 191970, ¶ 26. The ALJ did not abuse his discretion in qualifying Weaver as an expert.

¶ 36     Next, Powell argues that the ALJ erred by admitting exhibits that were not "authenticated." The Department responds that Powell forfeited review of this issue because the arguments are "undeveloped." See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (appellant's argument must  include the "contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on.").

¶ 37     As best we discern his point, the thrust of Powell's argument revolves around whether he "admitted" to the authenticity of the documents by answering his complaint, as the Department argues. He is correct that he did not fully admit to the authenticity of the appraisals attached to the complaint; he admitted to performing the appraisals and preparing the reports but noted, for example, that the copies of the reports were "of very poor quality" and thus "should be stricken."

¶ 38     In any event, the documents were authenticated at the hearing. Weaver explained the Department's process for storing documents, how he obtained them, and what, in his expert opinion, he believed they were. To Powell's credit, everyone at the hearing recognized that the exhibits were of poor quality. But Weaver testified that this was not abnormal, and he could still review them. Given our standard of review, we cannot say that the ALJ abused his discretion in admitting the appraisal reports into evidence.

¶ 39                                 CONCLUSION

¶ 40     We affirm the circuit court's judgment affirming the Board's final decision.

¶ 41     Affirmed.